BARRETT v. BAKER *et al.*, *Appellants*.

In Banc, December 23, 1896.

1. Note: DEED OF TRUST: ESTOPPEL. Where the maker of a note gives a deed of trust on land belonging not to himself but to the payee, the latter, by selling the note which purports to be so secured, is estopped from denying the validity of the deed of trust, and as against him and his vendee with notice the purchaser of the note has an equitable lien upon the land for the amount of such debt.

2. ———: ———: BONA FIDE PURCHASER. The maker of a note executed a deed of trust, to secure the same, on land owned by the payee who thereupon sold the note to plaintiff, and five years after the maturity of the note arranged through an agent to sell the land to defendant. The trust deed was noted on the abstract of title examined by defendant, but the payee subsequently made a written statement upon the margin of the deed of trust, attested by the recorder, in which he declared he was the legal holder of the note and acknowledged payment in full and satisfaction of the deed of trust, whereupon the defendant, having no notice of the transfer of said note, and no other notice of plaintiff's equities, accepted the title and purchased the land. *Held*, that defendant was a *bona fide* purchaser without notice of plaintiff's equitable lien on the land, as against the payee in the note.

3. Appellate Practice: ANSWER: WAIVER. The objection that the answer was insufficient to raise the issue on which the case was tried can not be made for the first time on appeal.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

.*F. W. Lehmann* and *George Robertson* for appellant Nichols.

(1)   The deed of trust executed by Roy was inoperative, as Roy had confessedly no interest in the land which could be affected by the deed, and it does not assume to be the deed of Baker by Roy as his agent or attorney. Sec. 2395, R. S. 1889. (2) The deed of

trust from Roy to Baker could become operative, if at all, only by reason of matter *in pais*, that is, by reason of false representations made by Baker to Barrett which would estop Baker from denying the efficiency of the deed as a mortgage, and it is not alleged that any such representations were made to Barrett, or that he depended upon any such representations. (3) The deed from Roy to Baker, lying outside of the chain of Baker's title, was not notice to Nichols. *Crockett v. McGuire,* 10 Mo. 34; *Tydings v. Pitcher,* 82 Mo. 384; *Lessendefer v. Kemp,* 83 Mo. 584; 1 Devlin on Deeds, sec. 713, note; *St. John v. Conger,* 40 Ill. 537; *Chicago v. Witt,* 75 Ill. 211; *Kerfoot v. Cronin,* 105 Ill. 609; 2 Pomeroy's Eq. Jur., sec. 658. (4) The note, respecting the Roy deed of trust upon the abstract furnished Nichols, did not constitute notice to him. *Chicago v. Witt,* 75 Ill. 211; *Farm and Loan Co. v. Maltby,* 8 Paige, 361; Wade on Law of Notice, sec. 210; Pomeroy's Eq. Jur., sec. 658. (5) Notice to Nichols of the existence of the deed of trust was not notice of any matters *in pais* which would serve to make it efficient as a mortgage. Pomeroy's Eq. Jur., sec. 606; *Converse v. Blumbach,* 14 Mich. 109; *Drey v. Doyle,* 99 Mo. 459. (6) While Baker may be estopped from denying the efficiency of the deed of trust as a mortgage, Nichols is not so estopped because he was not a party to the transaction creating the estoppel, and it is neither alleged nor proven that he had any knowledge of that transaction. 7 Am. and Eng. Ency. of Law, p. 18; *Rice v. Bruce,* 49 Mo. 231; *Thistle v. Buford,* 50 Mo. 278. (7) No inquiry that Nichols could have made would have led him to a knowledge of the facts which estopped Baker from denying the efficiency of the deed of trust as a mortgage. (8) Barrett had it in his power for more than five years before Nichols purchased the land, to

protect himself by securing a proper deed of trust. He is responsible for the present situation and should therefore suffer the inevident loss. *Hurd v. Kelly*, 78 N. Y. 588; *Newhoff v. O'Reilly*, 93 Mo. 164; *Lee v. Turner*, 89 Mo. 489; *Bank v. Bank*, 71 Mo. 197; Pomeroy's Eq. Jur., sec. 810. (9) The note in question was not negotiable, and therefore entry of satisfaction by Baker was good as to Nichols. *Chouteau v. Allen*, 70 Mo. 290; Jones on Mortgages, sec. 814; *Reeves v. Sayes*, 95 Ind. 521.

*T. B. Buckner* for respondent; *W. W. Fry* of counsel.

(1) Respondent contends first that the deed of trust on which this action was based was at least an equitable mortgage of Baker's interest in the land at the time it was executed, and bound it for the payment of the note in controversy. *McQuie v. Peay*, 58 Mo. 56; *Blackburn v. Tweedie*, 60 Mo. 505; *Martin v. Nixon*, 92 Mo. 26; Jones on Mortgages, chap. 5, sec. 162; *Clark v. Holland*, 72 Iowa, 34; *Russell v. Russell*, 1 Leading Cases in Equity [4 Am. Ed.], 941; *Love v. Mining Co.*, 32 Cal. 639. (2) If it may be implied from a written agreement that land is to be chargeable with, or security for a debt, it amounts to an equitable mortgage. *Russell v. Russell, supra*; 2 Story, Eq. Jur., sec. 1020; 1 Hill on Mortgages, 647, sec. 1; *Chase v. Peck*, 21 N. Y. 583; Neil, Eq. Mortgages, 218, note. (3) The deed of trust from Roy to Baker being properly acknowledged, was properly admitted to record. R. S., sec. 7430 and sec. 2418. And when recorded "it is imparted notice to all persons from the date of filing." R. S., sec. 2419. *Drey v. Doyle*, 99 Mo. 468. (4) The registry act of this state applies to equitable mortgages with the same force and effect as it does to legal mortgages. *Dingman v. McCullom*, 47 Mo. 372;

*Blackburn v. Tweedie,* 60 Mo. 505; *Carter v. Holman,* 60 Mo. 498; *McQuie v. Peay,* 58 Mo. 56; *Tydings v. Pitcher,* 82 Mo. 379; 1 Jones on Mortgages, sec. 469. (5) This deed of trust being an equitable mortgage and properly recorded, imparted notice to all parties, was constructive notice, which is "a conclusion of law which can not be controverted." *Drey v. Doyle,* 99 Mo. 488. (6) In the case at bar the appellant had not only constructive notice (which can not be controverted), but he had actual notice of the existence of the mortgage. Notice to the attorney in a case of this kind was notice to the principal. *Hedrick v. Beeler,* 110 Mo. 91. (7) And a legal title acquired for a valuable consideration with notice of an outstanding equitable title, or with knowledge of such facts as would put a prudent man upon inquiry, is held subject to that equity. 1 Story's Equity [12 Ed.], sec. 395; *Le Vere v. Le Vere,* 2 Leading Cases Eq., 35; Bispham's Principles of Eq., sec. 262; *Widdicomb v. Childers,* 84 Mo. 382; *Meier v. Blume,* 80 Mo. 179; Wade on Law of Notice, sec. 210; *Swisher v. Sensenderfer,* 84 Mo. 104; *Sensenderfer v. Kemp,* 83 Mo. 581; *Eck v. Hatcher,* 58 Mo. 235; *Kirsch v. Tozier,* 38 N. E. Rep. 375. (8) Notice to the defendant in this case was both actual and constructive. But actual knowledge of plaintiff's equity was not necessary. The rule being that "notice" does not mean positive information brought directly home to the party sought to be charged therewith and affected thereby; but any fact that would put an ordinarily prudent man upon inquiry is notice. *Meier v. Blume,* 80 Mo. 184, and authorities there cited; see, also, *Drey v. Doyle,* 99 Mo. 467; *Hickman v. Green,* 27 S. W. Rep. 444; *Tydings v. Pitcher,* 82 Mo. 385; *Bank v. Delano,* 48 N. Y. 336. (9) The attempted satisfaction by Baker of the deed of trust in question, he having sold and indorsed the note to plaintiff, was an

absolute nullity. "The payee of a note secured by a deed of trust, after he has assigned the note before maturity, can not by entering satisfaction of the debt on the margin of the record, or in any other manner, discharge the property of the lien, as between a *bona fide* purchaser and the assignee of the note." *Lee v. Clark*, 89 Mo. 553; *Hagerman v. Sutton*, 91 Mo. 519; *Rice v. Macfarlane*, 34 Mo. App. 407; *Rice v. Macfarlane*, 41 Mo. App. 489; *Cummings v. Hurd*, 39 Mo. App. 139; *Bartlett v. Eddy*, 49 Mo. App. 32; Jones on Mortgages, sec. 814.

W. M. WILLIAMS, *Special Judge.*—This is a suit in equity, in which plaintiff seeks to subject a tract of land, now belonging to defendant Nichols, to the payment of a note executed by defendant Roy to his codefendant Baker, and by the latter sold and delivered to the plaintiff Barrett.

Roy, on May 5, 1882, made his note for $3,500, due one year after date, payable to the order of defendant Baker, and executed a deed of trust to secure the same, upon the land in controversy, which was then the property of Baker, the payee in the note. This deed of trust was filed for record on the seventeenth of May, 1882.

Baker, after indorsing a credit of $1,000 on the note, sold it to plaintiff Barrett, a citizen of New York, for $2,500. Baker kept the interest paid until May, 1889, and Barrett held the note for about six years, without making any examination or inquiry, so far as this record shows, in reference to his security.

It is alleged in the petition, and conceded by the parties, that Roy never had any title to, or interest in the land, either legal or equitable.

The defendant Baker, about the fourteenth of December, 1888, more than six years after the making

of the deed of trust, through his agent, James W. Daniels, an attorney and real estate agent, contracted to sell this land to defendant Nichols for $3,200. It does not appear that Nichols had any dealing concerning the land with Baker personally, but the entire transaction was with Daniels. All that Nichols learned about the title, so far as any intimation in the evidence shows, was from him.

An abstract was presented and Nichols requested Daniels to examine it. The Roy deed of trust was noted upon the abstract. Daniels informed Nichols of this, and told him that Baker's title was imperfect, as he expressed it, upon that account. The abstract was returned in a few days to Daniels, with a notation thereon, showing that Baker, after the former examination, had entered satisfaction of the deed of trust. This written statement upon the margin of the record was signed by Baker and attested by the recorder, and declared that Baker was the legal holder of the note and that he acknowledged payment in full thereof and satisfaction of the deed of trust. Daniels reported this to Nichols and that Baker's title was then perfect. Nichols thereupon concluded the purchase and accepted the deed.

The record also shows that there was other land in the deed of trust besides that conveyed to Nichols; that Baker sold this also, and that a similar abstract was examined by another attorney and Baker's title pronounced good, and thereby he was enabled to sell said other tract also.

The real question presented, as shown by the above statement, is, whether Nichols, at the time of his purchase, had notice of Barrett's equity, for it must be conceded that, although the deed of trust executed by Roy, a stranger to the title, did not of itself constitute a valid mortgage, yet the sale of the

note purporting to be secured by a lien upon the land operated as an estoppel upon Baker to deny the validity of said deed of trust, and, as against Baker, and purchasers from him with notice, Barrett was clearly entitled to a lien upon said real estate for the amount due upon the note.

It is unimportant in this case to determine whether the record was *constructive* notice to Nichols of the existence of the deed of trust. He had *actual* notice thereof. It was noted upon the abstract, and his attention was specifically called to it. He must therefore be held to have had knowledge of its contents, and notice of every fact about which inquiry would have been suggested to an ordinarily prudent man from the provisions of the deed, and which could have been ascertained by reasonable examination and inquiry. It is settled law that "one will be charged with notice of a fact who has information which should put him upon inquiry, if, by following up such information, with diligence and understanding, the truth could have been ascertained." *Jennings v. Todd*, 118 Mo. 303. It is also true that "a purchaser is not required to use the utmost circumspection. He is bound to act as an ordinarily prudent and careful man would do under the circumstances." *Kirsch v. Tozier*, 38 N. E. Rep. 375. Ordinary prudence and diligence is all that is required. *Cambridge Valley Bank v. Delano*, 48 N. Y. 326.

Nichols knew of the deed of trust, and this is the *only* notice that he had. There seems to be no dispute in the evidence, that he had *this* notice, and further, that he had *no other* or greater notice than would be suggested by an examination of this instrument. Was this sufficient to charge him as a purchaser *mala fide?*

The instrument executed by Roy did not of itself constitute a valid lien upon Baker's land. The deed

of trust, while the note was held by Baker, could not operate as an incumbrance in his favor, upon real estate to which he had the absolute title. *He* could not well hold a *lien* upon his *own land*. The plaintiff's equity to enforce a lien upon the land arises out of his transaction with Baker, subsequent to the execution of the trust deed. It is of *this* that Nichols must have had notice at the time of his purchase, and he must have drawn the inference of the existence of plaintiff's rights, if at all, from what was suggested by the deed of trust. What notice did the deed of trust give of this equitable lien?

It could not have been inferred from the existence of the deed of trust that Roy held an unrecorded deed to the land, or had some interest therein, which did not appear of record. The pleadings and evidence negative any such interest on Roy's part. Nichols should not be held to have had *notice* of that, which did *not exist*, and which *no inquiry could have discovered*.

It is urged, however, that there was sufficient in the deed of trust to put him upon inquiry as to the transfer of the note; that he must have known that the deed of trust was procured by Baker for some purpose; that Baker would not be guilty of the idle act of clouding his title by an apparent incumbrance without any purpose in view; that it was reasonable to presume, and Nichols should have presumed, that Baker procured the execution of the deed of trust in order to raise money upon the note. This, however, assumes that Nichols had notice that Baker procured Roy to make the deed of trust,—the very point in controversy. It is argued by counsel for Nichols that it was quite reasonable for one seeing the abstract to conclude that the land in this deed of trust was misdescribed and Baker's land inserted by mistake instead of Roy's. It may be said in favor of this contention that common experi-

ence attests the fact that mistakes of this character are of frequent occurrence.

In order, however, to charge Nichols with notice of plaintiff's rights, it must be held that the deed of trust itself would have suggested to a reasonably careful person, the unusual and extraordinary transaction that occurred between Baker and Roy, and Baker and Barrett; and that one reading this instrument would have had sufficient notice therefrom to put him upon inquiry, as to the uncommon dealings between these parties. It certainly is not customary for a landowner, desiring to raise money upon his land, to procure the execution of a note and a deed of trust upon the land by a stranger to the title, in order that the owner may negotiate such note. This is not the usual method of borrowing money upon real estate. It is not strange, therefore, that it did not occur to Nichols, or to the lawyers who examined this title, that such a course had been adopted.

It is likewise out of the ordinary course of dealing for one who loans money upon real estate to accept a note, purporting to be so secured, and to hold the same for six years, without ascertaining that the grantor in the deed had at least some semblance of title, or claim to the land mortgaged. It is not unreasonable that an ordinarily careful man, seeing the abstract, and knowing that Roy had no title, should not have presumed, or had it suggested to his mind, that a third party had bought the note, and loaned $3,500 upon the faith of Roy's deed of trust. Such conduct is so unusual, unnatural, and unbusiness like, that a party should not be regarded as negligent, or inattentive to inquiries suggested by the deed of trust, because it did not suggest itself to him that Baker might have obtained money by negotiating this note, and thereby have

Barrett v. Baker.

estopped himself from denying the validity of the deed of trust.

It further appears that the note was five years past due when Nichols bought. Baker's written declaration upon the record that he was the owner and holder of the note, and that the same was satisfied in full, which was equivalent to a statement that it had never been negotiated, was brought to the attention of Nichols. All the circumstances known to Nichols, or suggested by any fact of which he had notice, indicated the truthfulness of this statement, and we can not think that, under the facts developed in this case, Nichols should be held to have had notice of Barrett's equitable lien upon the land, as against Baker.

The point is now made, for the first time, that the answer is insufficient to raise the issue that Nichols was an innocent purchaser. The case of *Holdsworth v. Shannon*, 113 Mo. 508, is cited in support of this contention. The objection, however, comes too late. The case was tried in the lower court upon the theory that the pleadings were sufficient to present this question. No objection was made to the answer upon the trial or in the printed briefs filed in this court. It can not be considered now. This was expressly so ruled in *Kinzer v. Kinzer*, 130 Mo. 126, in reference to a similar objection, made for the first time in the supreme court.

It follows from what has been said that the judgment should be reversed and the cause remanded, with directions to the circuit court to enter judgment in favor of defendant Nichols. BRACE, C. J., and GANTT and BURGESS, JJ., concur. BARCLAY, SHERWOOD, and ROBINSON, JJ., dissent.