## HOGAN, ET AL., v. PETERSON.

Bill of Exceptions—Appeal and Error—Instructions—Evidence—Estoppel—Damages—Replevin—Motion for New Trial.

1. The fact that a bill of exceptions, allowed, signed, and filed, was presented for allowance within the time granted for its reduction to writing may be shown by a recital in the bill; and a statement in the bill that it was presented within the time allowed is sufficient, although it is better practice for the bill to set forth the date of its presentation.

2. The certificate of the clerk appended to the transcript stating that it contains a true and complete copy of the bill of exceptions, on file and of record in his office, sufficiently authenticates the bill and shows also the fact of its having been filed.

3. The assignment of a matter as error for the first time in counsel's brief is not sufficient to entitle the alleged error to consideration.

4. Where the conduct of the trial court in calling a jury after a waiver thereof by the parties is not separately assigned as

error in the petition in error, nor included in the error assigned upon the denial of the motion for new trial because in such motion that matter was not specified as one of the grounds, error predicated thereon will not be considered.

5.  An alleged error in calling a jury to try the cause, after a waiver thereof by the parties, must be embraced in a motion for new trial to entitle it to consideration on error in this court.

6.  Where it is not clear from the bill that certain instructions complained of were given, and the other instructions, if any, are not contained in the bill, and there being no statement therein that the ones complained of were all which were given, errors predicated upon the instructions are not properly presented and do not require consideration.

7.  In March, 1894, two of the plaintiffs in error made a verbal contract with defendant in error to take charge of and care for certain of her cattle for one half the increase. In January, 1895, a written contract was made between the same parties for the same purpose, to expire May 1, 1896, the compensation for the care of the cattle to be one half the increase during the term of the contract. One of the plaintiffs in error testified that the verbal contract was to run for three years, and the written contract was made upon his demand for a writing, and the term was then reduced to two years. Defendant in error and her husband testified that the verbal contract was abandoned by the other parties. When the written contract was made, said plaintiffs in error gave defendant in error a chattel mortgage to secure an indebtedness to her, covering the increase of the cattle for the years 1894, 1895, 1896. The new contract did not mention the prior one, but provided for a division in May, 1896, only of the increase during its term; and defendant in error testified that the inclusion in the mortgage of the increase of 1894 was a mistake of the person who drew the instrument. In the suit, the question at issue was the ownership of the increase of 1894. *Held*, that the facts and testimony was sufficient to sustain a finding by the jury that the former contract had been abandoned and that said plaintiffs in error had no interest in the increase of 1894.

8.  To estop a chattel mortgagee from claiming ownership of a part of the property included in the mortgage by mistake (the mortgagors having had no interest therein), as against a purchaser of the mortgaged property who pays the mortgage, it must appear that the mortgagee knew that said third party had bought or was buying said part of the property which

was improperly embraced in the mortgage, and was paying the debt upon the strength of that purchase; and also that the mortgagee by his acts, conduct, or silence led the one so paying the mortgage to believe he was getting the property free from any claim of right in said mortgagee.

9.   Where the record does not show whether the instructions requested as therein stated were given or not, or whether it embraces all of the instructions which were given, it will be presumed, on error, that the jury were correctly instructed.

10.   Where it appears in a replevin suit that two of the three defendants did not take the property and were not in possession of it when taken under the replevin writ, and had not been in possession thereof at any time after plaintiff became entitled thereto, a verdict against them for damages for detention is improper and without foundation.

11.   A motion for new trial being a joint one of all the plaintiffs in error, and having been properly overruled as to one, it must be held to have been properly overruled as to the others also.  (Elevator Co. v. Price, 4 Wyo., 293, followed.)

12.   Although, in a replevin suit, no damages for detention were proved, an assessment of one dollar as damages held to be so clearly intended to be nominal that it can not on error be regarded as excessive.

[Decided December 4, 1899.]

ERROR to the District Court, Fremont County, HON. JESSE KNIGHT, Judge.

Replevin.    The material facts are stated in the opinion.

*E. H. Fourt* and *M. O. Brown*, for plaintiffs in error.

The calling of a jury to try the cause, after a waiver thereof by the parties, was error.  (R. S., Sec. 2567; Syndicate Imp. Co. v. Bradley, 6 Wyo., 171; Suth. Stat. Const., 587; 60 Pa. St., 464.)   In case of a conflict between the journal entry as to the matter of calling a jury, and the bill of exceptions, the latter must control. (Roy v. U. M. Co., 3 Wyo., 417.)

The law presumes that when a settlement is made, such as that made between Hogan and Chandler and Mrs.

Peterson at the time of giving the note and mortgage, all the transactions between the parties up to that time are taken into consideration. (Roach v. Gilmer, 4 Pac., 221.) By taking a mortgage, the mortgagee tacitly admits that the title to the property covered thereby has been considered and settled to be in the mortgagors; and the mortgagee can not be permitted to repudiate the settlement, and at the same time avail herself of the benefits of the security. (Wells v. Neff, 12 Pac., 84.)

It became the duty of Mrs. Peterson to give Mr. Fourt notice of her claim to the property included in the mortgage, at the time he paid the same, and said that he was buying the property. (2 Pom. Eq., 597; Wilson v. McCullough, 62 Am. Dec., 347; Raymond v. Flavel, 40 Pac., 158.)

The mortgagee is estopped from claiming title to any of the property covered by the mortgage. (Torrey v. Bank, 9 Paige, 649; Cruger v. Daniel, 1 McMullan Ch., 157; Ward v. McIntosh, 12 O. St., 231; 7 Wheat., 316; Bigelow Estoppel, 268, 291; 2 Smith's Leading cases, 818; Swain v. Seamans, 9 Wall., 254; Dickerson v. Colgrove, 100 U. S., 580; Titus v. Morse, 40 Me., 348.)

*James S. Vidal* and *Clark & Breckons*, for defendant in error.

The time of the presentation of the bill of exceptions must appear from the record proper. A statement thereof in the bill is insufficient. (2 Colo., 20; 127 Mass., 161; 114 id., 362; 24 Mo. App., 543; 82 id., 195; 95 Ind., 404.)

The failure to set forth the alleged error in calling a jury, in the motion for new trial, is a waiver of it. (54 Neb., 630; 51 Pac., 481; 45 id., 139, Rule 13.) The ordering of a jury to try a cause, properly triable by a jury, even though the parties may have waived a jury, is not error. (27 Cal., 250; 31 Pac., 367; 15 Mo., app., 385.)

If the record fails to show that it contains all the

instructions given to the jury, it will be presumed that proper instructions were given. (87 Ala., 514; 13 Colo., 1; 57 Ind., 188; 117 id., 377; 69 Ia., 41; 154 Mass., 432; 30 Mich., 362; 25 O. St., 369; 33 id., 444; 12 Wis., 659.)

There is no foundation in the evidence for invoking the principle of estoppel against defendant in error. Mr. Fourt read the contract, and must have known that the only cattle to be delivered to his vendors were their interest in the increase of 1895 and 1896.

Potter, Chief Justice.

The first question for our determination relates to the bill of exceptions. Counsel for defendant in error contend that the bill is not entitled to consideration for the reason that it is not shown by the record proper, that it was reduced to writing and presented for allowance within the time allowed by the order of the court.

By an order regularly entered in the journal at the term when the exceptions were taken, and at the time of overruling the motion for new trial, the plaintiffs in error were given time until and including the first day of the next term of the court within which to present their bill of exceptions. It is recited in the bill as follows : " Whereupon the court ordered that defendants have time until and including the first day of the next succeeding term of said court, in said Fremont County, to reduce their exceptions to writing, and in which to present their bill of exceptions to the court or to the judge thereof in vacation for allowance. And thereupon, the defendants *within* the *said time allowed* them, now tender this their bill of exceptions, which is allowed, signed, sealed, and ordered to be filed and made a part of the record in this said cause. "

This court has held that the granting of time beyond the term to complete and tender a bill must be evidenced by the entry of an order during the term; and that a recital in the bill that time was so given is insufficient,

Smith Drug Co. v. Casper Drug Co., 5 Wyo., 510; Schlessinger v. Cook (recently decided). The reasons which induced that conclusion do not prevail as to the time of tendering the bill.

Time having been granted beyond the term and until and including the first day of the next succeeding term to present the bill, the court has, by authority of the statute, retained control of the record of the cause, and if the bill is tendered within the time allowed, is competent upon its allowance to make an order that the bill be constituted part of the record as much so as if the bill had been reduced to writing and presented for allowance during the term at which the exceptions were taken. In Mc Bride v. Union Pacific Ry. Co., 3 Wyo., 183, it was held that no journal entry was required to show the allowance and signing of a bill of exceptions; and it was said: "The allowance, signing, and perhaps filing are what constitute it a part of the record, and no journal entry is necessary for that purpose." The statute provides that when the bill has been allowed and signed, it shall be filed with the pleadings as a part of the record, but not spread at large upon the journal. The bill being a part of the record, as a result of the allowance, signing and filing thereof, there occurs to us no valid reason why the time of its presentation, and the fact that such presentation was within the time allowed, may not be set forth in the bill itself over the signature of the judge. If no journal entry is essential to preserve a record of the allowance, but the bill itself, disclosing such allowance and signing, operates as a sufficient record thereof, it would seem reasonably to follow that, as to the matter of presentation, it is only required that it appear upon the face of the bill that the presentation was within the time allowed. It was said in Smith Drug Co. v. Casper Drug Co., supra, "but the bill must show on its face that it was presented within the time allowed." In that case it was held that the absence from the order of allowance appearing in the bill of a statement that it was tendered within the time allowed was fatal to the bill.

While it is probably better practice for the bill to show the date when it was tendered, we think a statement that it was presented within the time allowed is sufficient. In this case the time allowed by previous order is recited in the bill, and immediately following that recital it is stated that the bill was presented within the *said* time allowed.

The certificate of the clerk appended to the transcript states that it contains a true and complete copy of the bill of exceptions on file and of record in his office. This sufficiently authenticates the bill, and shows also the fact that it had been filed.

Counsel for plaintiff in error, in their brief, contend that there was error in the proceedings in the court below in this; that after both parties had waived a jury, the court ordered and impaneled one to try the cause. The bill of exceptions recites that the jury was called upon the demand therefor by the plaintiff, after a previous waiver, and without the advancement of the required jury fee; while the journal entry does not show that such a demand was made. The matter was orally argued by counsel, and it was earnestly insisted that the statute is mandatory in its provision that after a waiver upon the formal call of the docket, and a failure to pay the fee exacted from a party demanding a jury, " a jury shall not thereafter be allowed or called in such case during that term."

It will be unnecessary to refer to all the statutory provisions covering this question, or to determine whether error was committed in that regard, for the reason that the question is not properly before the court. The conduct of the court in calling a jury is not assigned as a ground of error in the petition in error; and although the denial of the motion for new trial is assigned as error, that motion did not specify that matter as one of the grounds for a new trial. The question was not brought to the attention of the court at all, after verdict, so far as the record discloses. Our Rule 11 requires that the petition in error shall distinctly set forth each of the errors complained of; and Rule 13 provides that the ruling of the court below

upon each matter presented by a motion for new trial shall be sufficiently questioned by an assignment that the court erred in overruling such motion. The assignment of the matter as error, for the first time in counsel's brief, is not sufficient, and does not comply with the rule.

Again, we are of the opinion that it should have been embraced in the motion for a new trial, to entitle it to consideration here on error. It was held in Syndicate Improvement Co. v. Bradley, 43 Pac., 79 (6 Wyo., 171), that an alleged error in denying a demand for a jury trial would not be considered where the question had not been raised in the court below on a motion for a new trial.

In the motion for new trial certain alleged instructions to the jury are complained of; but it is not made clear by the bill that they were given, nor is it apparent that all the instructions given are embraced in the bill. It is stated in the bill as follows: "And the plaintiff re-, quested the court to give the following instruction and charge." Following the alleged instruction, appears the statement, "To which charge the defendants at the time duly excepted." We can only say by way of inference that the requested instruction was in fact given. In Bank of Chadron v. Anderson, 53 Pac., 280 (7 Wyo., 441), it was said, "Where the bill is unintelligible, confused, or conflicting, it will be interpreted against the appellant, and in support of the judgment, as the exceptant is responsible for all deficiencies therein." The absence of the other instructions if any which were given, or a statement that those recited in the bill were all which were given, renders the court unable to determine whether the instructions complained of, if erroneous in themselves and standing alone, were modified or cured by others. For these reasons the errors assigned in respect to the instructions are not properly presented and do not require consideration. We are the more persuaded to refrain from such consideration on account of the omission from the brief of counsel of any discussion of the instructions. Three questions only seem to have received the attention

of counsel. First, the alleged irregularity in requiring the cause to be submitted to a jury· ~~ ~~nd, that the verdict is not sustained by sufficien⁺ ~~viuence~~; and, third, that the damages assessed are ex ~~ussive~~. The matter of calling a jury has already been co~~i~~ sidered.

This is a replevin suit for certain cattle. Briefly stated, the facts of the case are as follows: In March, 1894, Anna Peterson, being the owner of one hundred and thirty head of cattle, made a verbal contract with Gust Hogan and Sim Chandler, two of the plaintiffs in error, whereby the latter were to take charge of and care for said cattle in consideration of their receiving one half of the increase. The term for which said contract was to run is stated by Hogan to have been originally three years. He, however, testified that it was subsequently changed to two years. Mrs. Peterson does not enlighten us as to the term of the original agreement, evidently for the reason that she claimed and so testified, that the contract made in 1894 had been abandoned. It is clear that until at least some time in November or December, 1894, Hogan and Chandler had ostensible charge of the cattle, although Mrs. Peterson claimed that they did not give them much or very careful attention.

January 16, 1895, a written contract was entered into, whereby Mrs. Peterson leased to Hogan and Chandler the same one hundred and thirty head of stock cattle, and some horses and steers (the horses and steers not being involved in the case). It was agreed that Hogan and Chandler should range and care for the stock, and receive therefor one half of all the increase during the term of the contract, which was to terminate on the first day of May, 1896, when the increase was to be divided between the parties at the ranch of Mrs. Peterson.

Chandler was not a witness, but Hogan testified that after the making of the verbal contract of March, 1894, he insisted upon a written agreement, and that the original term was reduced to two years, and we understand his claim to be that the written contract was made because of

his demand therefor, and that the term thereof was fixed to carry out the subsequent arrangement limiting the term to two years from the time of original contract. On the other hand, Mrs. Peterson and her husband both testified that Hogan and Chandler abandoned the verbal contract, "threw the cattle up — broke the contract," as Mrs. Peterson says. In response to questions by the court, she testified in relation to the first contract as follows: "Q. In March, 1894, you made a contract with these young men to take your cattle; you went to Mr. Preston and had him write a contract, but it was never signed; you and your boy took care of the cattle from the 15th of March until along toward May, so these young men could put in the crops; then in May they took the cattle down the river?" "A. No, not until that fall." "Q. At that time in May, there were how many stock cattle?" "A. There were 130 head."

"Q. What time in the fall did they take the cattle down the river?"

"A. In November or December."

"Q How many calves with that bunch?" "A. There were 49 calves that fall. "Q. They went down the river with these cattle on a verbal contract to bring them back, and they threw up that contract, when?" "A. Before they brought the cattle back." "Q. Then they didn't bring the cattle back?" "A. No, sir." "Q. Who did?" "A. They came up and gave up the stock and the ranch also."

On the same day that the written contract was made, Hogan and Chandler gave Mrs. Peterson their note for $197.82, for certain expenses the latter had incurred on their account. To secure that note, they executed a chattel mortgage, which on its face covered an undivided one-half interest in the increase of the cattle aforesaid for the years 1894, 1895, and 1896. Said note was to become due on or before May 1, 1896, which was the date fixed upon by the contract of 1895 for the division of the increase. On or about May 1, 1896, the cattle, or what was left of them, were at Mrs. Peterson's ranch, and a

division was then to be made of said increase. In the meantime Hogan and Chandler having become indebted to Mr. Fourt, the other plaintiff in error, had agreed to turn over to him their interest in said increase, subject to the mortgage.

At the time set for making a division Hogan and Fourt, and certain attorneys representing Mrs. Peterson, and others, were present. Mr. Fourt is an attorney also, and the indebtedness to him accrued, or was to accrue, on account of professional services rendered to either Hogan or Chandler, or both of them.

No question arises over the division of the increase under the written contract; but Mr. Fourt insisted on taking, and did take, the two-year-olds, or the increase of 1894, over the objection and against the protest of Mrs. Peterson's representatives. He says he took nine head of such cattle. These cattle were very shortly thereafter replevined in this suit brought by Mrs. Peterson against Hogan, Chandler, and Fourt, and the controversy arises solely with respect to the right of the parties respectively to the increase of the original bunch of stock cattle for the year 1894.

The jury returned a verdict for the defendant in error, the plaintiff below. It is evident that, by their verdict, the jury found that before the making of the contract of 1895, the former one, made in March, 1894, had been abandoned, and that neither Hogan nor Chandler, therefore, had any interest in the increase for that year. As has been stated, both Mrs. Peterson and her husband so testified, which if believed to be true, together with the fact that the new contract made no mention of a preceding arrangement, and provided only for a division in May, 1896, of the increase during the term of that contract, was and is sufficient upon which to base such a finding, as against Hogan and Chandler; notwithstanding that the chattel mortgage included the increase of 1894, as Mrs. Peterson testified that such inclusion was by mistake of the person who drew up the instrument.

At the time of the division, or immediately preceding

it, Mr. Fourt paid the note and mortgage; and it is seriously maintained that as to him, the defendant in error is estopped from asserting any right to the cattle in controversy by reason of her acceptance of the mortgage covering the same, and receiving payment from Fourt, who, it is contended, in making the payment relied upon the fact that the particular cattle in question were embraced in the mortgage.

. Approaching this question it must be assumed that Hogan and Chandler, the mortgagors, were not in reality possessed of any interest in the stock involved in this suit. The jury have so found upon conflicting evidence; and it is sufficient to sustain their verdict in this respect. From that standpoint, it is to be considered whether the circumstances of the purchase of the property by Fourt, if he did purchase it, and his payment of the amount secured by the chattel mortgage, were of such a character as to estop Mrs. Peterson from contradicting the apparent ownership and title of Hogan and Chandler asserted in and by the mortgage.

If Fourt, instead of getting the property from the mortgagors, had purchased the note and mortgage from the mortgagee, and the latter had sold it without claiming title or any right of ownership in the mortgaged cattle, and Fourt had not been informed otherwise concerning the true condition of affairs, it is clear that the mortgagee would have been thereafter estopped from affirming as against her purchaser and to his injury, any interest in the cattle described in and ostensibly covered by the mortgage. Barrett v. Baker, 136 Mo., 512.

Mr. Fourt, however, bought nothing from the mortgagee. He acquired whatever rights he had become invested with from the mortgagors, and was proposing to protect himself in those rights by discharging the lien of the mortgage. Under these circumstances, to invoke the principle of estoppel as against Mrs. Peterson, it must appear that she knew that Fourt had bought, or was buying, from Hogan and Chandler a one-half interest in the increase of

1894, and was paying the debt due her upon the strength of that purchase; and also that, by her acts, conduct, or silence, she led him to believe that he was getting that interest free from any claim of right thereto in herself.

As the record does not show whether the instructions requested as therein stated were given or not, or whether it embraces all of the instructions which were given, we must presume that the jury were correctly instructed upon this matter of estoppel; and hence our investigation must be confined to the evidence bearing upon the question. Upon the evidence, it is apparent that the question is a close one, and yet as it is concerned with facts alone, and depends upon the testimony which is in some particulars conflicting, our aim has been to ascertain whether or not there is enough in the evidence to justify the jury in acquitting the defendant in error of any such knowledge or conduct as would render the principle relied upon applicable. It is not for the court to say what its conclusions would have been independently of the verdict.

The fact has already been adverted to, that the object of the meeting on or about the first of May, 1896, was the division of cattle under the contract of January, 1895, and that it was held pursuant to the provisions of that contract. This fact the jury had before them. It is conceded in the testimony that, prior to that time, Mr. Fourt knew that a written contract existed. He had seen it on one previous occasion at least, when called upon to examine its provisions with reference to the horses in behalf of some other parties. He stated, however, that he then paid no attention to it so far as it concerned the cattle, and that he did not read it on the day he paid his money and took the cattle, until objection was raised to a division of the two-year-olds, which was subsequent to his payment of the mortgage.

He also unquestionably knew that the mortgage covered not only the increase of 1894, but that of 1895 and 1896 as well. We are not prepared to say that the jury would not be warranted in finding that he might also have known,

if he did not, that the written contract excluded the increase of 1894 from its provisions. But however that may be, two witnesses testified that he examined and read the contract on the day he took the cattle, and before he paid the mortgage. Mr. Sheldon, who was present representing Mrs. Peterson, testified that Mr. Fourt made a remark to the effect that he would like to go ahead and divide the stock; and the witness replied that he did not think any division was to be made until the mortgage was settled up, and when that was paid they were willing to "divide the stock under the contract." That Fourt then took the contract, read it, and said, "Very well, then, I will pay the mortgage; we will divide the stock under the contract." Mr. Vidal, another of Mrs. Peterson's representatives, testified that it was his recollection that Mr. Fourt read the contract before the payment of the mortgage, and corroborated Mr. Sheldon as to his having stated that the cattle would be divided "under the terms of the contract."

While it is true that Mr. Fourt testified that he informed the parties that he was buying the stock, and asked if there were any other claims upon it, he fails to show that he was at all definite in his information respecting the stock he was buying; that is to say, whether he had reference to the stock described in the mortgage or embraced in the contract. Both instruments were presumably in the possession of Mrs. Peterson or her representatives. It is particularly observable that at no time, until the actual work of division had commenced, did he say that he was buying, or expected to obtain an interest in, the two-year-old-cattle. If the contract had been abandoned, it would seem that Mrs. Peterson would, in the absence of contrary advice, have a right to assume that Hogan and Chandler were attempting to dispose of only such an interest as they, in fact, possessed. Therefore, in view of the statements and testimony of Sheldon and Vidal, the jury would not be unwarranted in concluding that the others understood Mr. Fourt's remarks to refer only to

the increase under the written contract.    If they actually understood or believed otherwise, it is not made to appear by any statement to that effect, and their knowledge is to be derived solely from what was said and done at the time. At the first attempt to take any two-year-old stock, objection and strong protest was immediately made.

So much for the knowledge on the part of Mrs. Peterson that her mortgage was being paid by one who was purchasing an interest in the increase of 1894.    As to her explanations, it may be said that if the jury believed that Mr. Fourt read the contract when it was handed to him, as Mr. Sheldon testified, then they might reasonably conclude that the statement made by the latter, that the stock would be divided under the terms of the contract, was an ample explanation of a purpose to divide no cattle which were not included in that contract, and to retain for Mrs. Peterson all other cattle there at the time.

Such a conclusion would not, at least, be entirely without warrant in the evidence.    Although Mr. Fourt testified that Hogan and Chandler all the time claimed an interest in the increase of 1894, he did not make it at all plain that when he parted with his money, he believed he was acquiring that interest free and clear from all right in Mrs. Peterson.

While it may be true as suggested that for all that appeared in the written contract, Hogan and Chandler might have been interested in the increase for the preceding year under another agreement; yet, as that interest was in no way referred to in the contract, and the purpose of the meeting was to divide the stock pursuant to the arrangement made by the contract, the jury might find, we think, and reasonably so, that Mr. Fourt should have made it perfectly clear before paying the mortgage that he expected to have the two-year-old cattle.

For these reasons we are of the opinion that an appellate court should not disturb the verdict, so evidently based upon a finding of facts sufficient to defeat the application of the doctrine of estoppel.

The jury assessed damages in the sum of one dollar against the plaintiff in error Fourt, and fifteen dollars against Hogan and Chandler. It is contended that these damages are excessive. In the view that no damages for detention were proved, the amount assessed against the two last named is clearly excessive, unless it should be regarded as nominal merely. The distinction, however, made in the verdict between the damages in respect to the different defendants, shows that the larger amount was not intended to be nominal. It is difficult, however, to comprehend upon what theory any verdict was rendered against Hogan and Chandler. They did not take the cattle, and were not in possession of them when they were recovered under the replevin writ, and so far as is disclosed by the testimony had not been in possession at any time after the division was made. Had they presented a separate motion for a new trial, they would have been entitled to the vacation of the judgment against them. The assessment of one dollar as damages against Mr. Fourt is so clearly intended to be nominal, that it can hardly be seriously argued that it is excessive.

For reasons above set forth, Mr. Fourt was not entitled to a new trial. The motion for new trial being properly overruled as to him, and the motion being a joint one of all the plaintiffs in error, it must be held to have been properly overruled as to the others also. No. Platte Milling Co. v. Price, 4 Wyo., 293. The judgment will be affirmed.

*Affirmed.*

CORN, J., concurs.
KNIGHT, J., did not sit.