# CHARLESTON

MYERS *v.* CARNAHAN *et al.*

Submitted June 11, 1906.    Decided February 26, 1907.

1.    CONTRACT—*Construction by Parties.*

When a contract is ambiguous and of doubtful and uncertain meaning, and the parties have by their conduct contemporaneous therewith or subsequent thereto, placed a construction upon it which is reasonable, such construction will be adopted by the court. (p. 417.)

2.    SAME—*Subsequent Contract—Effect.*

A subsequent contract which does not by express terms abrogate an earlier contract, will nevertheless operate as a discharge thereof if it is inconsistent with such earlier contract. But to operate as a discharge, in the absence of an express agreement to

that effect, the new contract must be clearly inconsistent with the continued existence of the original contract. (p. 418.)

3. SAME—*Discharge of Former Contract.*

Where a new contract is made with reference to the subject matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with a later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original, which are inconsistent with those of the latter. (p. 419.)

Appeal from Circuit Court, Monongalia County.

Bill by Solomon Myers against John E. Carnahan and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

FRANK P. CORBIN, GEORGE C. STURGISS, and CHAS. GIBBS CARTER, for appellants.

GLASSCOCK & GLASSCOCK and MORELAND & MORELAND, for appellees.

SANDERS, PRESIDENT:

On the 12th day of October, 1899, Solomon Myers leased to Oran C. Bradley for oil and gas purposes, a tract of land containing about one hundred and thirty-five acres, situated in Monongalia county. By its terms the lease was to remain in force for a term of five years from its date, and "as much longer as the rent for failure to commence operations is paid, and as long after the commencement of operations as said premises are operated for the production of oil and gas." It was further provided that "this lease shall become null and void, and all rights hereunder shall cease and determine unless a well shall be completed on the said premises within three months from the date hereof, or unless the lessee shall pay at the rate of $32.75-100 dollars, quarterly in advance, for each additional three months such completion is delayed from the time above specified for the completion of such well, until such well is completed." This lease was later assigned to John E. Carnahan, Uriah H. Debendarfer and James F. Gump, Bradley retaining an interest in it. About the 12th day of July, 1904, a location for a well was made, but nothing further toward development was done at that

time, and on the 14th day of July, following, the following agreement was entered into between the parties and endorsed upon the back of the lease:

"July 14th, 1904.

"In consideration of one dollar ($1.00) in hand paid to us by J. E. C. the receipt of which is hereby acknowledged, we agree to extend the within lease for a period beyond October 12th, 1904, on the following conditions

"Parties of the second part agree to commence a well within ten days from date, and prosecute the same with all due diligence until completed; but on account of unavoidable accident, if the wells is not completed within the life of the lease, or October 12th, 1904, we hereby agree to accept a rental of one hundred dollars ($100.00) per month in advance for each month until a well is completed."

The lessees, after this agreement was made, quit work, and never took any steps toward carrying this agreement into effect. The reason for this, as stated by Carnahan, is that at the time of the making of the second agreement, he thought the lease was in the ordinary form of an oil lease, requiring oil to be produced within the life time of the lease, but that, after making a careful examination of it, he discovered that it was not in the usual form, and upon taking the advice of his attorney, he was told that in order to maintain his rights under it, it was only necessary that operations should be begun within the time limited in the lease. About the 6th day of October, 1904, the lessees learned that Myers had executed a blanket lease upon the property to third parties, and on the 10th day of October, 1904, two days before the expiration of the five years from the date of the lease, they moved on the premises, erected a rig and began drilling a well, which was completed some time in January, 1905, and which produced both oil and gas in paying quantities.

During all the time after the date of the lease, at or before the beginning of any three months, the rental of thirty-three dollars and seventy-five cents for every three months was either paid to the lessor direct or deposited to his credit as provided in the lease.

Myers filed his bill in equity to obtain an injunction and to

quiet title to the oil and gas, and later filed an amended bill. The lessees answered both these bills, to which Myers replied generally. Depositions were taken, and on the hearing the court decreed in favor of the plaintiff. From this decree the defendants have appealed.

The record presents for our consideration the construction of the lease and the agreement subsequently made and endorsed thereon. This lease is unusual in form, and we cannot find that such lease has ever been construed by this or any other court. It is so indefinite and ambiguous that it is very difficult, if not impossible, from its language, to gather the real intention of the parties, and any construction that may be given it, independent of extraneous facts and circumstances, will necessarily be attended with much uncertainty. It should be construed by considering it in its entirety, giving each and every part due weight and meaning, if this can be done. None of the provisions should be ignored, nor should there be anything injected into it which the parties have not seen proper to incorporate therein. And after applying these tests of construction, if the contract is found so ambiguous and uncertain that the true meaning and intention of the parties cannot be ascertained therefrom, then we may summon to our aid certain extrinsic facts and circumstances. A provision of this lease being that it shall remain in force for a term of five years from its date, and as much longer as the rent for failure to commence operations is paid, and as long after the commencement of operations as the premises are operated for the production of oil and gas, and it further providing that it shall become null and void unless a well shall be completed within three months from its date, or unless the lessees shall pay a stipulated sum quarterly in advance for each additional three months such completion is delayed until such well is completed, makes it indefinite and uncertain as to whether or not the lessees should complete a well and actually begin operations by the production of oil and gas, or whether or not the beginning of exploration for oil and gas within the five years, and the payment of the quarterly rentals extended the life of the lease beyond the limit of five years. The contention of the appellee is that oil must be produced within the five years, while the appellants claim that the work which they did

preparatory to producing oil and gas on the 10th day of October, 1904, and the payment of the rentals served to extend the life of the lease.    In view of the uncertainty of meaning and ambiguity of the lease, in determining this question we should construe the lease in connection with the agreement subsequently made and endorsed thereon. When this is done, we find that the parties have construed the lease themselves to · expire at the end of five years, unless oil or gas be produced within that term.    The practical construction put upon a contract, where it is ambiguous in meaning, by the parties thereto, is of great weight, and ordinarily controlling.    *Clark* v. *Sayers and Lambert*, 55 W. Va. 512; *Heatherly* v. · *Bank*, 31 W. Va. 70; Page on Contracts, section 1126.    In a case decided by the United States Supreme Court, *Chicago* v. *Sheldon*, 76 U. S. 54, the Court, in its opinion, says:  ''In cases where the language used by the parties to the contract is indefinite or ambiguous, and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not, controlling, influence.''    *R. R. Co.* v. *Trimble*, 77 U. S. 367; *Topliff* v. *Topliff*, 122 U. S. 121.    ''It is a familiar doctrine that when the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court, because it is the duty of the court to give effect to the intention of the parties, where it is not wholly at variance with the correct legal interpretation of the terms of the contract.'' Beach on Contracts, section 721.    The subsequent agreement clearly shows by its express language that the parties construed the original lease to expire on the 12th of October, 1904, unless a well be completed within that time.    The agreement provides that the lease shall be extended for a period beyond that time upon certain conditions, that is, a well should be commenced within ten days and prosecuted with all due diligence until completed, and provided further if not completed on account of unavoidable accident within the life of the lease, which was stated expressly to be limited to the 12th day of October, 1904, that then the lessor would accept a rental of one hundred dollars per month for each month until such well was completed.    Not

only does this agreement show that the contract was so understood and thus construed by the parties thereto, but the letter written by Carnahan to Myers on the 21st day of July, 1904, and within a few days after the new agreement, also shows that he still adhered to that meaning and construction. It is true that Carnahan more than a month later in another letter to Myers, said that in looking over the lease with the company's attorney he found that it needed no extension, but it must be understood that he had not done anything under the new agreement, and the ten days within which he expressly agreed to commence a well had expired. No doubt he had concluded that his rights under the subsequent agreement had determined, and upon consultation with the company's attorney he deemed it best to rely upon the original lease, and so notified Myers. Why the necessity for this new contract providing for an extension of the lease, if the original lease did not expire at the end of five years? The lessees held leases upon adjoining territory, which they were developing, and which they desired to test before expending large amounts upon the Myers land. But recognizing the approaching death of the Myers lease, they were anxious to procure an extension. After the adjoining territory had become valuable for the production of oil and gas, and after Myers had leased his land to others, the lessees on the 10th of October, over the protest and objection of Myers, rushed upon the property, and began what they call operations, which they now claim served to extend the lease.

We are next to determine the effect of the new agreement of July 12, 1904, upon the original lease. It is claimed by the appellee that it terminated the lease, and that the lessees not having commenced a well within the ten days from its date, and not having completed a well during the life of the lease, nor paid the rentals thereon, that the new contract, as well as the original lease, was at an end from and after the 12th day of October, 1904. An executory contract may be discharged by a new contract entered into for that purpose between the parties thereto, and if the new contract abrogates the earlier one by express terms, no question of the intention of the parties can usually arise. But a subsequent contract which does not by express terms abrogate an earlier

contract, nevertheless will operate as a discharge thereof if it is inconsistent with such earlier contract. And where a new contract is entered into changing a part of the earlier contract, or containing provisions clearly inconsistent with a part of the old contract, those provisions of the earlier one inconsistent with the provisions of the latter will be superseded, and the two contracts will be taken and construed together, and of inconsistent provisions, those in the first will yield to those in the second contract. "A new contract with reference to the subject matter of a former contract does not supersede the former, and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts, and from an examination of the circumstances, that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto." Beach on Contracts, section 706; Page on Contracts, section 1339; *Fox* v. *Tyler*, 109 Fed. 258; *Robinson* v. *Ry.*, 84 Mich. 658; 48 N. W. 205; *Frank* v. *Corban*, 20 Mont. 168; 50 Pac. 423; *Nebraska Nat. Bk.* v. *Clark*, 58 Neb. 183; 76 N. W. 527; *Sherman* v. *Sweeney*, 29 Wash. 321; 69 Pac. 1117; *Hogan* v. *Peterson*, 8 Wyo. 49; 59 Pac. 162; *Uhlig* v. *Barnum*, 43 Neb. 584; 61 N. W. 749.

Therefore, when we construe the lease with the contract subsequently made, and endorsed thereon, we find certain inconsistent provisions. By the original lease it was provided that it should remain in force for the term of five years from its date, and as much longer as the rent for failure to commence operations was paid, and as long after the commencement of operations as the premises were operated for the production of oil and gas, and further that the lease should become null and void and all rights thereunder cease and determine unless a well should be completed on the premises within three months from the date thereof, or unless the lessee should pay a stipulated sum quarterly in advance for each additional three months such completion should be delayed. The provisions of the new lease were that a well should be commenced within ten days from the date thereof, and the same should be prosecuted with all due diligence until completed, but on account of unavoidable accident, if the well was not completed within the life of the lease, or

October 12, 1904, the plaintiff agreed to accept a rental of one hundred dollars per month until such well was completed. Therefore, it clearly appears that this provision of the new agreement is inconsistent with the provisions of the original lease, and that the parties intended to change and did change the original lease in this respect, and having done so, and not having complied with the terms thereof, as provided therein, the lease expired at the end of five years. Entertaining these views, we affirm the decree of the circuit court.

*Affirmed.*