# CHARLESTON.

EMMA M. HUTCHINSON *ex'x. v.* E. R. JUDY *et al.*

(No. 5956)

Submitted October 18, 1927.   Decided November 8, 1927.

1. CONTRACTS—*Written Instrument Ordinarily Supersedes Prior Oral Contract on Same Subject.*

A written instrument ordinarily supersedes a prior oral contract on the subject.   (p. 452.)
(Contracts, 13 C. J. §§ 515, 616.)

2. SAME—*Practical Construction Given Ambiguous Written Contract by Parties is Entitled to Great Weight.*

When a contract is patently ambiguous, and the parties by their conduct have given it a practical construction, their version is entitled to great weight in determining its proper interpretation.   (p. 451.)
(Contracts, 13 C. J. § 517.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Greenbrier County.

Suit by Emma M. Hutchinson, executrix, against E. R. Judy and others. From a judgment for defendants, plaintiff appeals.

*Affirmed.*

*Thomas N. Read* and *Thomas L. Read,* for appellant.
*Jarrett & Driscoll* and *Dice & Easley,* for appellees.

HATCHER, PRESIDENT:

The plaintiff conducted an automobile business in a building leased from the defendant. In the rear of this building was a lot and garage owned by defendant, which he was renting to another party at $6.00 a month. The plaintiff desiring more room entered into a written contract with defendant, dated June 16th, 1924, relative to the lot, which contained the following provisions: (a) The lot was leased for a period of two years, at a ground rental of $6.00 a month. (b) A building was to be erected on the leased lot, at the expense of the lessee. (c) That building was to be constructed according to the plans and specifications of the lessee. (d) The lease, however, was not to prevent a sale of the lot. (e) In case of sale, the lessor was to endeavor to secure a continuance of the lease until the term expired. (f) If the property was sold and disposed of before the lease expired, the lessor should pay the lessee the cost of the building, subject to depreciation. (g) The lessee was not to sell or remove the building, without consent of the lessor.

Following the execution of the contract, plaintiff had the garage torn down and erected a building in its place at a cost of $1,259.48. On August 22nd, defendant sold the lot to A. Abas and G. Ellis, subject to plaintiff's lease. Plaintiff sold her business to the Blair Motor Company some time after the sale of the lot. But she, and after her, the Motor Company, occupied the building, undisturbed, during the entire term of the lease.

This suit is brought to recover the cost of the building. It is based on the clause in the contract which provides that in case the property was sold before the term expired the lessor should pay to the lessee the cost of the building, etc. The lower court dismissed the bill.

Under the provisions of the contract the lessor was apparently concerned only in his lot and his $6.00 a month ground rental. He exhibits no interest in the kind or the cost of the

building to be placed thereon. He is careful to provide that the lease of the lot is not to prevent its sale. While the owner of property can informally give his consent to its sale by another, the fact that a clause forbidding sale or removal of the building without the lessor's consent appears in the contract must be given some significance. It would seem to imply that the lessee had the right to sell or remove the building subject to the permission of the lessor, but a permission which could not be arbitrarily withheld.

As the contract makes no reference to a disposal of the building when the term should expire, it seems that the lessee was most concerned in securing the use of the lot for the two-year period. While she agreed that the lease was not to prevent a sale of the lot, she was careful to secure the promise of lessor that in case of sale, he was to endeavor to have the lease continued for the term. The lease does not indicate that she would be prejudiced by a change of landlords. On the contrary, she appears anxious to continue the tenancy, no matter who might purchase the lot. From her standpoint, *the term* seems to have been the important thing, not who should be the landlord during the term.

This obvious construction is not consistent, however, with the provision requiring payment for the building in case of sale. The contract is therefore patently ambiguous, and we may seek aid in its interpretation from the situation and the conduct of the parties. *Lovett* v. *Gas Co.*, 73 W. Va. 40. The evidence shows that prior to June 1924 the lessor was negotiating a sale of the lot; for which reason he was indifferent about leasing it to plaintiff, and refused to erect any structure on it himself; and that he did not consider or treat the building as his property after it was constructed. The evidence also discloses that during the preliminary negotiations, the plaintiff was the one anxious relative to a lease of the lot; that after the lot was sold she attempted to sell the building to third parties, and demanded rent for it from the Motor Company after the company purchased her business. Her conduct is consistent only with this theory; she did not consider that the sale of the property rendered the defendant liable to her for the cost of the building—her tenancy having

been preserved. The practical interpretation of the contract by each party is in effect the same. That interpretation is reasonable and is entitled to great weight in its construction. *Myers v. Carnahan*, 61 W. Va. 414; *Butler v. Carlyle*, 84 W. Va. 753. When we consider the instrument as a whole in connection with the subsequent conduct of the parties, we are forced to conclude that it regards the building as the property of the lessee with the right in her to sell or remove the same (if she was not in contractual default), and that the repayment clause has reference only to a sale of the lot in which her lease should not be protected.

The plaintiff introduced evidence of a promise by defendant relating to the purchase of the building at the end of the term. The alleged promise was made prior to the execution of the written contract. We cannot consider that evidence as a written contract merges all prior oral agreements relative to the same subject. 13 C. J. 544 and 597; *Insurance Co. v. Board of Education*, 49 W. Va. 360 (377).

The judgment of the circuit court will therefore be affirmed.

*Affirmed.*