CRESCENT MFG. CO. v. PATTERSON MFG. CO.

(Circuit Court of Appeals, Fourth Circuit. February 15, 1912.)

No. 1,048.

APPEAL AND ERROR (§ 866*)—INSTRUCTED VERDICT—MOTION BY BOTH PARTIES
—REVIEW.

Where both parties moved for an instructed verdict without more, and the court directed a verdict for plaintiff on the theory that the case involved only a question of law, the court's action would be sustained on appeal if there were any facts which would sustain the court's application of the law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

In Error to the Circuit Court of the United States for the District of South Carolina, at Columbia.

Action by the Patterson Manufacturing Company against the Crescent Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Henry K. Osborne (Bomar & Osborne, on the brief) for plaintiff in error.

Charles W. Tillett (Tillett & Guthrie, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and McDOWELL and CONNOR, District Judges.

PRITCHARD, Circuit Judge. This was an action at law instituted by the defendant in error (plaintiff below) in the district of South Carolina against the plaintiff in error (defendant below) to recover $2,076.50, amount alleged to be due for cotton yarns sold by the plaintiff to the defendant during the year 1909. The plaintiff was a manufacturer of cotton yarns in Cabarrus county, N. C. The defendant was a manufacturer of hosiery at Spartanburg, S. C. Certain telegrams and letters were introduced for the purpose of showing the contract between the parties, but, owing to the condition of the record, we do not deem it necessary to give an extended statement of facts. At the close of the testimony the learned judge below directed the jury to return a verdict in favor of the plaintiff in the sum of $2,537.08, and it is from this judgment that the defendant below has brought the case to this court upon a writ of error.

It appears that plaintiff made a motion in the court below for a judgment in its favor, and it also appears that the defendant made a similar motion. The following statements taken from the record show what transpired at the close of all of the evidence:

"Mr. Bomar: We ask your honor to direct a verdict in this case in favor of the defendants.

"Mr. Osborne: We had intended to ask your honor to direct a verdict to be rendered in favor of the plaintiffs for the amount that was due under the terms of the contract, that is, for the stuff that was furnished, less the amount that we have been damaged by reason of their failure to furnish

the yarn, but it may as well be all brought up together, and we do now formally ask your honor to instruct the jury to bring in a verdict for the plaintiffs for the amount that is conceded to be due them, less the amount of damage that the evidence shows that the defendants suffered by reason of their failure to furnish the yarn under the contract.

"Court: This case, as it now appears, is practically decided by the ruling of the court admitting the letter of plaintiffs of April 8th. Mr. Foreman, both sides agree that there is no disputed question of fact. It is simply a question of law, which it is the duty of the court to decide. The court therefore instructs you to find a verdict for the plaintiffs."

Thus it will be seen that both parties moved for a directed verdict. Under the circumstances here, following Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, Sena v. American Co., 220 U. S. 497, 501, 31 Sup. Ct. 488, 55 L. Ed. 559, and Lawton v. Carpenter, 195 Fed. 362, 115 C. C. A. ——, decided by this court at this term, we are of opinion that the decision of the lower court should be affirmed.

Affirmed.

CONNOR, District Judge (concurring). By a different process of approaching and dealing with this case, I come to the same conclusion reached by the majority of the court. For the reasons, which I endeavored to set forth in Lawton v. Carpenter, at this term, I think that plaintiff in error is entitled to have its bill of exceptions and assignment of error passed upon. The question is whether the court below correctly interpreted the course pursued by counsel and correctly instructed the jury upon the law. I do not think that the doctrine of Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, and Empire Cattle Co. v. Railway, 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, deprives the plaintiff of this right, or relieves the court of this duty.

The bill of exceptions presents very clearly the question presented for our decision, disclosing the following undisputed facts: On March 30, 1909, Mr. Lancaster, treasurer of the Crescent Manufacturing Company, of Spartanburg, S. C., called herein defendant, wrote a letter to Mr. Cannon, of Concord, N. C., president of the Patterson Manufacturing Company, called herein plaintiff, in regard to an existing contract for the purchase of 50,000 pounds of cotton yarn. In the last clause of the letter he writes:

"Please advise us if you will accept an additional order of 50,000 pounds, to be shipped as soon as this one is completed, at same price."

This letter was followed by a correspondence in regard to prices. On April 7, 1909, plaintiff, by wire, proposed prices, to which defendant answered on same day by wire, "Telegram received, accept," and on same day wrote and mailed a letter to plaintiff confirming the proposition and acceptance, adding these words, "Shipments on the contract to begin at expiration of present contract." On April 8, 1909, plaintiff, by its president, wrote and mailed a letter to defendant, in the following words, to wit:

"Our telegram yesterday advising that 16½ and 17 cents the best we could do on 14's and 16's, 50,000 lbs. additional to follow present contract which you now have with the Patterson Mfg. Co., and in reply we have your

answer, to-wit: 'Telegram received, accept.' We take this to mean that you wish us to enter your order for 50,000 lbs., yarn additional, 14's at 16½¢ less 2 and 2, freight paid, deliveries to follow present contract. We have entered this additional contract with the Patterson Mfg. Co., China Grove, N. C., and will have their best attention. We understand that all these deliveries are to be taken up by Sept. 1st, 1909, as we could not make such low prices as these and let deliveries run over further period as we will have our warehouse full of cotton and do not care to have yarn left over where it is made up on contract. Can give you deliveries just as fast as you want them if you let us know in time."

This letter was received by Mr. Lancaster, treasurer of defendant. No acknowledgment or answer was made. This letter of April 8, 1909, closed the correspondence. Defendant ordered out installments of different quantities which were duly shipped by plaintiff until August 31, 1909. On September 1, 1909, Mr. Cannon, for plaintiff, wrote defendant:

"We are shipping your order of 8/31/09, as it was written before Sept. 1/09. On that date your contract expired by limitation. See Mr. Cannon's letter of 4/8/09, this states the condition on which the contract was accepted."

The total quantity of yarn shipped on this contract was 26,114 pounds, leaving a balance of 23,886. Defendants on September 2, 1909, demanded the shipment of balance yarn on the contract. Plaintiff refused to ship any more yarn. The balance due, on account of the yarn shipped, is $2,067.00, for the recovery of which plaintiff brought this action. Defendant in its answer admitted the balance due, and set up a counterclaim for $836.01 for damages sustained by reason of the refusal of plaintiff to ship the balance of the 50,000 pounds. The entire negotiation was in writing. The only question presented to the court was whether the defendant was entitled to recover on its counterclaim. At the conclusion of the testimony, both parties moved for a peremptory instruction, whereupon the judge said:

"This case, as it now appears, is practically decided by the ruling of the court admitting the letter of plaintiff of April 8th. Both sides agree that there is no disputed question of fact. It is simply a question of law, which it is the duty of the court to decide. The court, therefore, instructs you to find a verdict for plaintiff."

I am of the opinion that the court put a correct interpretation upon the status of the case and of its own duty. It is elementary that, when the terms of a contract are entirely in writing, and there are no inferences to be drawn from the language used by the parties, in regard to which two fair-minded men could differ, the construction of their language is a question of law for the court. This, I think, is a case to which the doctrine of Beuttell v. Magone & Empire Cattle Co. v. Railway, supra, applies. The sole question, therefore, is whether the judge below correctly construed the contract. The answer to this question is dependent upon the application of familiar principles of law. By the telegram from defendant of April 7, 1909, accepting plaintiff's offer, as to price, the contract was closed except as to time when delivery should be completed. While nothing was said in the telegrams of offer and acceptance as to when the deliveries were to commence by reference to the letter of March 30th, we find that they

were to commence when the deliveries under the existing contract were completed. Out of abundant caution, however, Mr. Lancaster, in his letter following and confirming the telegram, quotes the language, in that particular, of the letter of March 30, 1909. This left open only the time for completing the deliveries. Mr. Cannon on April 8th, and it would seem from its language, before receiving Mr. Lancaster's letter, writes the letter set out in the testimony, reciting the telegrams, the time of beginning deliveries, and concludes with the words, "We understand that all these deliveries are to be taken up by Sept. 1, 1909"—giving his reasons, etc. It is admitted that this letter was received by Mr. Lancaster in due course of mail. The first shipment under the contract was made April 30, 1909. If the contract prior to the receipt of this letter was incomplete and indefinite, because no time had been fixed when the deliveries were to be completed, it was competent for either party to name such time which the other party could either accept or reject. When Mr. Cannon notified defendant that he understood the time of delivery to be September 1, 1909, Mr. Lancaster was not compelled to accept his understanding, but he was under obligation to notify him of his rejection of it. The letter manifests a purpose, on the part of Mr. Cannon, to make certain and definite an important element which had been left uncertain and indefinite. From this point of view it is settled that:

"In cases where the language used by the parties to the contract is indefinite and ambiguous, and hence of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. The interest of each generally leads him to a construction most favorable to himself, and, where the difference has become serious, and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one." Chicago v. Sheldon, 9 Wall. (76 U. S.) 54, 19 L. Ed. 594.

"It is a familiar doctrine that where the terms of an agreement are, in any respect, doubtful or uncertain, and the parties to it have, by their conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court, because it is the duty of the court to give effect to the intention of the parties, where it is not wholly at variance with the correct legal interpretation of the terms of the contract." Beach on Con. § 721; Myers v. Carnahan, 61 W. Va. 414, 57 S. E. 134.

"When the construction to be given a contract is rendered doubtful, by the language thereof, the interpretation which the parties have put upon its language is entitled to great weight." Gibbes v. Manufacturing Co., 81 S. C. 10, 61 S. E. 1027.

Applying this familiar and reasonable principle to the admitted facts in this case, we have a contract by a manufacturing company to sell and deliver as called for to another manufacturing company a large quantity of cotton yarns at a stipulated price and time fixed for the commencement of delivery. The period for its termination has been left open. Immediately following the acceptance of the terms, as to price, the seller notifies the buyer that he understands that the deliveries are to be completed at a day more than four months in the future. At that time no deliveries are due. The day fixed is not only reasonable in respect to time, but it is a day when it is well known to

all dealers in cotton and its manufactured product that the "cotton year" closes, and the market for the "new crop" opens, and, as said by defendant in its letter, warehouse room and other matters connected with the handling of cotton become important. The understanding of Mr. Cannon was in every respect reasonable. The failure on the part of Mr. Lancaster to answer the letter is capable of but one reasonable construction—that he acquiesced in Mr. Cannon's understanding—interpretation of the contract. It is but a practical application of the familiar maxim recognized both in morals and law—that "silence gives consent." Of course, his conduct is open to explanation—the presumption arising from it may be rebutted. In this case Mr. Lancaster simply says: "I can't say that I read the letter of April 8th." He is not at all certain that he did not. It is a natural and reasonable presumption that a man who receives a letter on important business reads it. Mr. Lancaster does not rebut the presumption. It would be impossible for men to conduct business transactions by correspondence, in which contractual obligations are assumed, unless the principle applied by the judge in this case is enforced. Assuming, as contended by counsel for defendant, that, when the offer of plaintiff was accepted, the contract was complete, and that defendant was entitled to a reasonable time within which to order the yarn, I am of the opinion that, in the light of all the circumstances, the character of the goods to be delivered, the well-known course of the cotton trade, the time named by the letter of April 8th, nearly five months from its date, the period fixed for completing the deliveries was reasonable. The failure of defendant to answer the letter was a recognition of this fact. The letter was not an attempt to change or add to the contract new and contradictory provisions, but to make one of its essential provisions, left uncertain, certain, and definite.

I am of the opinion that the liability of plaintiff to deliver the yarn ceased on September 1, 1909, and therefore defendant was not entitled to recover on its counterclaim.