Anderson, J.
delivered the opinion of the court.
The question raised by the record of this case is, was-the deed of trust made by Peter P. Earman, on the 7th of May 1867 to secure his creditors therein named fraudulent?
In Dance & als. v. Seaman & als., 11 Gratt. 778, Judge Allen, in whose opinion the other judges concurred, says: “If it were a question of the first impression,it would be matter for grave consideration” “whether a deed of trust executed by a debtor on the verge of insolvency, creating preference amongst his creditors, postponing the time of sale, the possession in the meantime remaining with the grantor, and the profits to be received by him, and executed without the knowledge of, or consultation with the creditors, (very much our case,) should not be treated as made with a *567 fraudulent intent; because the reservations may tend to hinder and delay creditors in the prosecution of their legal remedies to enforce the payment of their debts. But these questions have been settled by a series of adjudications in this court. It would disturb many titles, if the principles heretofore established, and sanctioned by the practice of the country, were now to be questioned.” Where the bankrupt law does not apply, preference of favored creditors is the right of every debtor, and is a doctrine so well established, and so unquestionable, that it is unnecessary to cite authorities in support of it.
But it is contended that proof of fraud in this ease arises from the face of the deed. “ The court cannot presume fraud unless the terms of the instrument preclude any other inference.” Dance & als. v. Seaman & als., supra., And as was said by Judge Allen in that case, so it may be said in this, “the fraudulent intent is denied by the grantor.”—“As to the cestuis que trust, it is not pretended that they participated in any fraud. They were not consulted; and though, if the fraudulent intent clearly appeared on the face of the instrument, they would be affected by it if they claimed under it, the reservations on the face of the deeds do not raise, under the doctrines of this court, an irresistible presumption of fraud, which would, of itself, vacate the deed.”
It is true that some articles of property embraced in the conveyance are reserved for the use and enjoyment of the grantor, until default in payment, which must be consumed in the use, and could not in themselves strengthen the security; just as it was in Cochran v. Paris, 11 Gratt. 848; and Dance & als. v. Seaman & als., 11 Gratt. 778; and other cases which might be cited, in which it was held that the deeds were not *568 fraudulent. "Whilst such articles of property could not directly strengthen the security of the deed, they might indirectly, by ministering to the improvement,. and the support of the important and substantial subjects relied on as security, and thereby manifest an honest intent of the debtor to provide for the payment of his debts, as was held in Cochran v. Paris. But the articles of property of this description could not have been available to the judgment creditor in this case by reason of the stay law, if they had not been embraced in the conveyance. How then could the including them in the conveyance manifest an intent on the part of the grantor to defraud the judgment creditor ? And his reservation of the possession and use of the whole property, conveyed for three years, is upon condition that he pay the interest in the interim annually—a condition which may be enforced by the trustee by sale if he fails in its fulfillment. The tendency of this provision is to prevent the augmentation of the debt by an accumulation of interest, whilst the use of the property by the grantor, even to the consumption of that which is perishable, which is probably not more than a compensation for the payment of interest, may improve and support and strengthen the real security of the deed if faithfully carried out. And its fulfillment does not rest upon merely the personal obligation of the grantor, but the trustee is invested with power to enforce it; as we think, upon a fair construction of the deed he is empowered to sell if it is not complied with.
The length of time allowed the debtor to pay the debts, three years, cannot prejudice the judgment creditor. He is no worse off than he would be if the deed required an immediate sale. For whatever remains of the trust fund, after paying the deed of trust *569 •creditors, is subject to his judgment debt. And if the indulgence and forbearance extended by the former creditors to the debtor would enable him to pay the interest accruing on their debts for the period of the three years of forbearance, and perchance to reduce the principal, and to increase the value of the trust subject, it would be increasing the security for his debt. And if the intermediate, rents and profits are not in fact appropriated by the deed to the trust debts, they would be liable to his judgment, a liability which a court of equity would enforce. Lewis & als. v. Caperton’s ex’or & als., 8 Gratt. 148. This court has repeatedly sustained the deed, in cases where it deferred payment for a long period, and the grantor reserved the right to retain possession of the property, and to enjoy its rents and profits, though no provision was made, as in this case, for the payment of the annually accruing interest. See Lewis & als. v. Caperton’s ex’or & als.; Cochran v. Paris, and Dance v. Seaman, supra.
Nor does the execution of the deed pending a suit by the appellant against the grantor for debt, and a short time before the commencement of the term at which it was probable judgment would be rendered against him, render it fraudulent and void. Skipwith’s ex’or v. Cunningham, 8 Leigh 271. Nor is the provision which authorizes an earlier sale, if desired by the grantor, repugnant to and incompatible with the avowed object and purposes of the deed, so as to render it invalid and void. This provision of the deed does not authorize the grantor to sell and account to the trustee or the cestuis que trust, as in Lang v. Lee, 3 Rand. 410, and in Spence v. Bagwell, 6 Gratt. 444. Nor does it constitute him as an agent for the trustee for that purpose. It only authorizes a sale to *570 be made of the property before the settlement, if desired by the grantor, and an application of the proceeds to the payment of the debts. By whom? We think clearly by the trustee, who is invested with the sole power of selling and paying debts. The court is therefore of opinion that the reservations on the face of the deed do not raise an irresistible presumption of' fraud, which, of itself, vacates the deed, and would be notice to the creditors who take under it, so that they would be affected by it.
The court is also of opinion that the extrinsic proofs in the cause do not establish the existence of fraud, or-that the deed was made by the grantor with intent to defraud other creditors, who are not provided for by its terms. If he has a right to a preference amongst, his creditors, all of whom he regarded as equally just, he surely had a right to prefer those whom he regarded as just over those whom he regarded as unjust, though he might not be able to show that they were unjust-In giving such preference, the debtor may be unjust himself; yet, having the unrestricted power of alienation, if no lien has attached, he could sell his property to any creditor or purchaser, and apply the proceeds to the payment of any creditor he pleases. And if he-may do so with the property or its price, there would seem to be no good reason why he should not have the right to convey it by deed of trust for the benefit of' any creditor to whom he chose to give a preference. Brashear v. West, 7 Peters. R. 608; Murray v. Riggs, 15 John. R. 571. But there is no evidence that the creditors secured by the deed, or the trustee, had any knowledge of such fraudulent intent, if it could be imputed to him, or that either of them had any agency or participation therein; they were purchasers without notice of fraud, and could not be affected by it if it *571 existed. Upon the whole, the court is of opinion, that there is no error in declaring the said deed of trust to he valid and binding.
But was there error in dismissing the plaintiff’s bill? The plaintiff was entitled to the surplus fund, if any, after the payment of the debts secured by the deed of trust, and an account to ascertain their amount. But it is contended for the appellees, that he did not ask for it. There is no specific prayer in the bill for an account and the application of the surplus to the payment of his debt. The main object of the bill was to set aside the deed as fraudulent, and to subject the property primarily to the payment of his debt; and it contains a specific prayer to that end. But that is not the only object of the bill. If it were, that would be the only prayer. It prays also for general relief. That would have been unnecessary, if the only object was to set aside the deed as fraudulent, and to subject the whole property first to the satisfaction of his debt. The specific prayer is sufficient for that purpose. But, lest he might not be able to make out a case which would entitle him to that specific relief, he asks for such other and further relief as the nature of the case may require, and to equity may seem meet. And whilst we think the Circuit court was right in denying to him the specific relief he asked, we think he was entitled, as adapted to the case which he made, to an order, for an account and a decree for the sale of the trust subject, and an application of the surplus, if any, after satisfying the trust debts, to the satisfaction of his judgment. He was entitled to such relief under the prayer for general relief upon the case made by his bill. And so it was held in Skipwith'is ex’or v. Cunningham, supra. President Tucker, in that case, at the close of a long and able opinion, in which he disposes *572 of many intricate and important questions, and reaches the conclusion that the deed was not fraudulent, in which the other judges concurred, says: “I have now waded through all the questions in the case save one, and in that only do I find error. I think it very clear that the appellant had a right to an account of the trust fund, and to the payment of his debt out of the surplus, if any, after satisfying the scheduled creditors and those who acceded to the composition.” The court below had dismissed the plaintiff’s bill; and for that error alone, the cause was sent back for an account and further proceedings. In that case there was no prayer for an account and an application of the surplus fund to the plaintiff’s debt; but only as touching this point, a prayer for general relief. The court is of opinion, therefore, to reverse the decree for this cause and remand, and in all other ■ respects to affirm the decree of the Circuit court.
The decree was as follows:
This day came again the parties by counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in a written opinion filed with the record, that the Circuit court did not err in sustaining the deed of trust, executed by the appellee for the security of certain creditors therein named, and in giving validity to the same; but that there was error in dismissing the plaintiffs’ bill, instead of directing an account to ascertain the amount of debts secured by said deed of trust, in order to a decree for a sale of the trust subject, and the application of the surplus to the satisfaction of appellant’s judgment. It is therefore ordered and decreed *573 that so much of the decree as dismissed the plaintiffs’ bill be reversed, and that the residue thereof be affirmed. And the appellees being, in the opinion of the court, the parties substantially prevailing, it is^further decreed and ordered, that the appellant do pay to the appellees their cost by them about their defence in this behalf expended: which is ordered to be certified to the said Circuit court of Rockingham county.
Decree reversed.