# CHARLESTON.

FOLEY *et al. v.* RULEY *et al.*

Submitted February 8, 1897—Decided April 28, 1897.

43 518
47 787
43 513
49 11
s50 165

43 513
52 358

43 513
p54 476
s54 494

43 513
59 479

1. EQUITY PLEADING—*Plea in Abatement—Error.*

A plea in abatement, though in a chancery suit by one judgment creditor for himself and all lienors, may be withdrawn by the defendant filing it, and another defendant can not avail himself of it nor rely on its withdrawal as error. (p, 514.)

2. EQUITY PRACTICE—*Summons.*

A summons commencing a suit may issue on, be returnable to, and be served on, the same first Monday in a month, if rule day. (p. 514.)

3. JUDGMENT LIENS—*Enforcement of Judgment Liens—Suits Pending.*

When a suit under section 7, chapter 139, Code 1891, has been begun by one judgment creditor for himself and all other lienors to enforce the lien of a judgment on land, no other lien holder can sue for the same purpose. If he does, the pendency of the first suit may be pleaded in bar and dismissal of the second suit. (p. 515.)

4. EQUITY PLEADING—*Demurrer—Answer—Order of Reference.*

When a demurrer to a bill is overruled, a time reasonable under the circumstances of the case must be given for answer; but when a time is fixed, objection to its shortness must be made, else the point is waived. A mere order of reference, deciding nothing, may be made without such answer. (p. 518.)

5. CERTIFICATE OF PUBLICATION—*Amendment.*

Amendment of a certificate of publication of a notice may be made under leave of the court, as in the case of amendment of return of service of process. (p. 518.)

6. DEED—*Description.*

What is a sufficient description of land in a deed. (p. 520.)

Appeal from Circuit Court, Doddridge County.

Separate bills by B. W. Foley, for the benefit of himself and other lien holders, against F. J. Ruley & Bro. and others, and by W. S. Stuart, for the benefit of himself and other lienholders, against said defendants Ruley. The two cases were consolidated, and from a decree for complainants defendants appeal.

*Affirmed.*

JAS. HUTCHINSON and C. T. CALDWELL, for appellants.

W. S. STEWART, JOHN BASSEL, C. W. LYNCH, and M. H. WILLIS, for appellees.

BRANNON, JUDGE:

B. W. Foley, suing for the benefit of himself and other lien holders, brought a chancery suit against F. J. Ruley & Bro. and others to enforce the lien of a judgment of the plaintiff and judgments of other parties against the land of Ruley & Bro., and afterwards W. S. Stuart, suing for himself and other lien holders, brought against F. J. Ruley & Bro. a chancery suit for, we may say here, a similar purpose. The two cases were consolidated, and a joint decree pronounced therein enforcing lien and selling lands to pay the same, and F. J. Ruley and others appealed.

The first point made against the decree is that the court should have sustained a plea in abatement filed in the Foley suit by W. S. Stuart, but the short answer to this is that Stuart withdrew that plea. It is said that he could not do that to the prejudice of the Ruleys, considering that this was a suit brought for the benefit of all lien holders, but it was the personal plea of Stuart, and if the Ruleys wanted to make the defense on that plea they should have filed one of their own. I know no law by which the plea, especially a plea in abatement, of one defendant can be insisted upon against the will of the one filing it. But that plea is bad as a plea in abatement. It is leveled at the writ and should pray that the writ be quashed, not order whether the defendant should further answer. 1 Chit. Pl. 462; Steph. Pl. 345.

The second point made against the decree is that two pleas in abatement filed by F. J. Ruley in the Stuart suit were ignored by the court. One of those pleas alleged that the summons was issued February 5, 1894, returnable to the first Monday in February, 1894, which was the same day. That has long been a common practice, and was approved in the case of *Spragins* v. *Railway Co.*, 35 W. Va. 139 (13 S. E. 45). The other plea set up the pendency of the Foley suit before the commencement of the Stuart suit, averring that Stuart was a defendant in the Foley suit. This is not exactly a plea of another suit pending

between the same parties for the same cause. Such a plea has been sometimes called a plea in abatement, at other times a plea in bar. Bart. Ch. Prac. 247. I regard this plea as in bar under the statute, and that it need not be filed at rules. A point is made against it because not filed at the first rules. Then what is its effect? It states two facts,—one, that another suit brought in behalf of all lien holders to enforce judgment liens against the real estate was already pending at the date of its institution. Is this a good bar to the Stewart suit, except under statute, as between living parties? One judgment creditor can bring his own suit on his own judgment to enforce his lien, unless he has been made a formal party in another suit. As against the estate of a dead man, it is also so. It is true that, after an order of account in a suit to administer a dead man's estate, if another creditor, with knowledge of it, bring a suit for the same purpose, he will pay the cost of his suit. *Laidley* v. *Kline*, 23 W. Va. 565. This seems to have been the established chancery practice to prevent numerous suits against a dead man's estate, all his assets being a fund for the payment of his creditors, and to avoid their exhaustion by numerous suits; but I do not understand that to be the practice in suits to enforce liens against land of a living man. As to the estate of a dead man there was no prohibition against separate suits by separate creditors until the court had made an order of reference for the convention of all the creditors, thus making the suit one for the benefit of all creditors; but our statute has very properly gone beyond this, and fully provided for a chancery suit to administer his real estate for the benefit of his creditors, and has provided that if, after the commencement of that suit, any creditor commence another suit, either in law or in equity, no costs shall be recovered in such last-mentioned suit. Whether in such case a plea setting up the pendency of the former suit would be in bar, calling for the dismissal of the second suit, is not before us. That would rest on the construction of that statute,—chapter 86, Code 1891. In the case of liens against the realty of a living judgment debtor, our statute, in section 7, chapter 139, Code 1891, has gone far beyond the rule of chancery practice before it, if it be as I have stated above. That statute plainly intends one suit, and one

only, to enforce all liens resting upon the land, and to prohibit multiplicity of suits, devouring the land to the injury of both debtor and creditors. I think that, after a suit is brought by one lien holder for the benefit of himself and others, no other can sue, and though the suit be not so brought, yet another cannot sue after an account of liens is ordered for the benefit of all. The statute allows a defense of this kind to a second suit, because it says that the court may enjoin it and compel him who brings it to come in and assert his lien in the first suit, or may make such order in relation to it as the court or judge may deem right to protect the interests of all parties, and I have no doubt that the pendency of the first suit may be set up by plea in bar of the second suit upon it with costs, because that suit is brought in violation of law. This plea also averred that Stuart was a formal party to the Foley suit. That is another reason why he should not prosecute a second suit, for, as I understand the law, when a party is made a defendant to a suit as to a particular right and may receive in it relief, he must abide its result, receive his relief under it, else there would be endless confusion, great harassment to the debtor, and piling up of costs upon him. It is essential that these principles, to avoid multiplicity of suits, burdensome costs, and confusion of proceedings, be rigidly enforced. But in this case this plea was not followed up. The defendants did not bring it to hearing, nor prove the facts involved in it. Where there is a demurrer, and it is not expressly passed on, it is deemed to have been overruled, because no facts are necessary to be shown there, the bill showing them; but a plea introduces new facts, and they must be proven. Say that, as the cases were heard together, the facts stated in the plea would be shown by the record of the Foley case; what then? Looking at it, we find that the Stuart bill is more comprehensive than the Foley bill, embracing matters not embraced by the latter bill; and particularly it attacks a conveyance of a tract of land to the wife of D. C. Ruley as voluntary and fraudulent as to creditors, a matter of importance to creditors not at all contained in the Foley bill. Now we shall have to treat this plea under principles governing the plea treated of in the books as a plea of another suit pending. It is in effect an allegation that another

suit is pending between the same parties, on the theory that the same relief can be administered in one of the chancery suits as in both. Turning to Bart. Ch. Prac. 369, we find that in order that such a plea be available "it is requisite that the whole effect of the second suit should be attainable in the first, and if it appears on the face of the plea that this is not the case the court will overrule it, and it sometimes happens that the second bill embraces the whole subject in dispute more completely than the first. In such cases the practice appears to be to dismiss the first bill with costs, which puts the case upon the second bill in the same situation that it would have been if the first bill had been dismissed before the filing of the second. The common practice in such cases is to hear the causes together. The defense of another suit pending does not apply where the second bill, though by a different person, although for the same matter, as far as concerns the foundation of the demand, is for a different equity." 1 Beach, Mod. Eq. Prac. § 33, says that "the pendency of a prior suit will not be a bar to a subsequent suit, if the latter embraces more as to parties and subject-matter than the former, but it may justify an order of the court staying the further prosecution of the first suit." I cannot say, under these special circumstances, that this second suit was subject to dismissal, seeing the difference in matter here specified and in some other respects, especially as section 7, chapter 139, Code 1891, enables the court to make any order that may seem right and proper in such case, and the court has ordered the suits to be consolidated and heard together, and I do not see that any harm can come to the defendant from that, except a small amount of costs prior to the consolidation. It is true it may be argued that Stuart, as to the tract of land which he sought to subject, conveyed by the alleged fraudulent deed, could have filed an amended bill in the Foley suit, as it was brought for the benefit of all lienors; yet, under the well-established law laid down above, I hesitate to say that Stuart's suit could have been dismissed. And, then, suppose the court ought to have dismissed the Stuart suit on this plea, shall we reverse this decree for that error of mere proceeding, which seems to involve nothing more than a small amount of costs, when we know that in the Foley case the decree

was proper? That would justify the decree, and we ought not to allow this error, if such, in the Stuart suit to destroy the rights of the parties under the Foley suit.

The third point against the decree is that the court overruled the demurrer of the defendants to the Stuart bill. No cause of demurrer is assigned or appears, unless we say, as is argued, it was the pendency of the Foley suit, and this did not appear upon the face of the Stuart bill, and is no ground of demurrer. *See* v. *Rogers*, 31 W. Va. 475, (7 S. E. 436). The point that the South Penn Oil Company, having several oil leases on the real estate, was not made a party, is another ground of demurrer, but its rights do not appear on the face of the bill, and in fact that company was made a party to the Stuart case and the Foley case.

The fourth point made against the decree is that the court overruled the demurrer on one day, and required the defendants to answer on the next. I should say that this was an unreasonably short time, as a general thing, but the defendants did not ask longer time, did not ask a continuance; and there is nothing in this point, because the decree entered at that term was only an order of reference, not a decree on the merits, decided nothing, and the defendants had until the next term to file their answers, and did then file them.

Now, we come to the exceptions to the report of the commissioner. One exception is that proper notice of the commissioner's execution of the order of reference was not given. The certificate of publication showed its publication for four weeks, but not successive weeks. Would we not take it that the publication was four successive weeks rather than one week was skipped? I do not think that the omission of the word "successive" hurt the certificate. But an affidavit of the publisher, filed by leave of the court, amended the return in that respect, and I take it that it was as proper to allow that amendment as, under the same principles, authorizing the court to allow the amendment of the return of an officer of process, which is done at any time during the proceedings, and sometimes later, with great liberality. The editor is an officer, executing an order of publication, and the same principles apply to his certificate, or return thereof, as to officers' returns.

Another exception is because the tracts of one hundred and twenty-five and twenty-six acres were reported as owned by the partnership of F. J. Ruley & Bro., making them first liable to partnership indebtedness, while the title papers showed that it was owned by F. J. Ruley and his brother. Those papers show that the conveyances were to the firm.

Another exception is that a tract of one hundred and ninety-seven and one-half acres was the property of Lenora V. Ruley, as she could have shown, had she been served with process. She was a party to the Foley bill, and was served with process. That bill did not show why she was a party, but she came in and filed her answer, alleging ownership in the tract, but offered no proof thereof, save her answer, which was denied by replication; and the proof in the case shows that it was purchased with partnership money, and at the time of this report she had not filed her answer. Besides, she signed the Maxwell deed of trust, which distinctly recited that this tract of land belonged to F. J. Ruley. So there can be nothing in this exception to the report.

Another exception is that the commissioner reported a certain debt due under the Hammond deed of trust in blank. In one part of his report the commissioner, in referring to the land owned by Hammond, leaves the amount of the debt blank, but in the formal report of liens he gives the specific amount of that debt.

Another exception is that the report allowed a debt of sixty-five dollars and seventy-five cents in favor of Edwin Maxwell, special commissioner, for the use of Lewis Maxwell. It is said Edwin Maxwell could not assign the debt as commissioner; but the parties were before the court, and the decree would protect the debtor, and those entitled to the debt are making no exception, and, besides, the matter, if error, is below the jurisdiction of this Court, and not assignable as error for reversal.

Another exception is that the report allows a certain judgment in favor of G. D. Camden's estate, because it constituted a purchase-money lien on land in Ritchie. Except for the statement of the answer, denied by general replication, we do not know that any such fact exists, and we need not therefore discuss the question whether the

commissioner erred in reporting this debt, but it seems to me that if so the commissioner was bound to report that debt as a judgment binding the lands involved in this suit, as Camden could look to this land as well as his own, the debt being a personal debt, a judgment lien debt, and a specific lien debt. How could the commissioner omit it from his report? If Camden's debt should exhaust the Doddridge land, it might give right of substitution to some other creditor on the Ritchie land, if in fact any such exists.

Another exception is that the commissioner erroneously reported a deed of trust debt, under a deed of trust from the Ruleys to Edwin Maxwell, trustee, alleging that the description of the lands therein is uncertain. That trust conveys certain tracts of land lying on Arnold's creek and tributaries, and headwaters of Doe run, in Central and West Union districts in Doddridge county, giving description relative to each tract. Two of the tracts so reported were not identified, and were not decreed, but the others were, I think, identified by the aid of extraneous testimony. All that is required for description in a deed is reasonable certainty, and the deed need not be in itself fully capable of identification, because extraneous testimony, to apply the deed to the subject-matter to which it relates, and thus identify it, may be admitted to help out the descrption of the deed. This is very well established. *Simpkins* v. *White*, 43 W. Va. 125 (27 S. E. 241); *Thorn* v. *Phares*, 35 W. Va. 772 (14 S. E. 399); *Warren* v. *Syme*, 7 W. Va. 474.

Another exception is that the Ruleys should have had a credit of one thousand five hundred and seventy-four dollars seventy cents upon a certain Lewis Maxwell debt secured by a deed of trust. This is based on a certain alleged payment made on the 2d of April, 1890, upon certain indebtedness of the Ruleys to Maxwell. Afterwards, on the 4th of February, 1893, they gave the deed of trust to secure this debt, and they say that they did not get credit for that amount, but had laid the papers away and forgotten them. A settlement between Maxwell and them took place at the date of the execution of the deed of trust. In fact, they admit that there were three settlements, including this settlement at the date of the deed of

trust. Strange that they would forget so large a payment. The fact that the payment was made is unquestionable, but we do not know the elements entering into the settlement at the time of the date of the deed of trust. They did not appear before the commissioner to set up this credit, although the account lingered before him month after month for four months. When parties have settlement, it is conclusive, in the absence of mistake or fraud, and a bond or note—in this instance, a solemn deed of trust—is conclusive upon all items of the included account, and the burden is on the party seeking to re-open it, and he must distinctly allege, and by clear, convincing evidence prove, the particular facts. The court ought not to refer the matter to a commissioner to settle the accounts between the parties prior to the date of the settlement. But, I repeat, they made no effort to sustain this alleged credit before the commissioner, and his report is presumed to be right. *Caldwell* v. *Caperton*, 27 W. Va. 397; *Smith* v. *Patton*, 12 W. Va. 541, point 5; *Fry* v. *Feamster*, 36 W. Va. 454 (15 S. E. 253). No objection is made to any debt reported, save as to the omission of this credit.

Another exception is to the report as to the lien of the deed of trust executed by the Ruleys to indemnify Holmes as security in certain notes, on the ground that Holmes is proceeding to collect his claim for indemnity under another collateral trust on personal property, and the commissioner reports that said deed of trust cannot be enforced, for Holmes has not paid any of the debts for which the deed was executed. Now, this deed of trust constituted no lien on the lands, because it indemnifies as to notes which Holmes had signed, or might thereafter sign, without specifying any notes in any way, and is too general. *Goff* v. *Price*, 42 W. Va. 384 (26 S. E. 287). This debt was in fact not decreed against the land, but was declared a lien, and it was reserved for the future to decree upon it, and there is no ground for reversal of the decree on that score; but it can never be decreed, because of its voidness.

Another exception is that the commissioner erred in the manner or way of reporting the priority of liens. It is useless to go through the whole report to specify under this exception. It is sufficient to say that the liens are given their proper priorities, some debts being first lien on

certain property and second lien on other property, which
is very commonly the case. This exception is too general,
anyhow. It does not put its finger upon any error as to
priority given to any debt, and an exception to a report
like this, reporting various claims upon various parcels of
real estate, ought to give specifications. *Crislip* v. *Cain*,
19 W. Va. 438.

Another exception is that the commissioner reported
that the realty would not rent for enough in five years to
discharge the liens. The evidence referred to, to sustain
this exception, consists of depositions taken in an entirely
different case, not in these cases, and not referred to or
made part of the record in any order or in any wise, and
were taken in a suit in which the Ruleys were not parties.
D. C. Ruley, one of the owners of the land, and one of the
appellants, when asked about the renting of the land, said
in his deposition before the commissioner, when asked if
it would rent for sufficient in five years to pay the liens, in-
cluding the Maxwell deed of trust: "I do not think it
would. It would have to rent very high if it did." There
is nothing to sustain this exception, but the evidence is
against it. Then, there was the Maxwell deed of trust.
There was no right to rent the land, when it in law called
for a sale. Besides, the liens reported aggregated nearly
twenty-five thousand dollars, and there being about one
thousand, eight hundred acres of land worth about twenty
dollars an acre, how could it keep down the interest and
discharge the principal of this large sum in five years?
The bills charge that it would not, and they were taken
for confessed at the time commissioner made his report.

Another exception says that the commissioner erred in
not reporting a certain deed of trust given by the Ruleys
to Franklin Maxwell. Strange that debtors would except
to the failure to report an additional debt against them.
They cannot do it, because it does not aggrieve them. The
truth is that this Maxwell debt constituted a part of a sec-
ond deed of trust, and had the commissioner reported this
first debt he would have made the Ruleys pay the same
twice, as Maxwell's answer admits it.

The last point made against the decree is that it failed
to subdivide the land into lots for sale. The defendants
stood by during all this proceeding, and never until after

the commissioner's report, and the cause was ready for hearing, did they ask that it be done. They could not ask that the case be stayed for an order of partition or subdivision. The lands were decreed to be sold, in various tracts as conveyed, of different quantities, from fifteen to two hundred acres, except that there was one tract of three hundred and fifty-six and one-half acres. Besides, if the court had not directed how to sell, it is a matter left to the discretion of the commissioner. *Rose* v. *Brown*, 17 W. Va. 649. But the court directed it to be sold in tracts as conveyed, which is stated in Ror. Jud. Sales, § 81, under the authority of Chancellor Kent, to be the proper course. We see no error in this. We therefore affirm the decree.

*Affirmed.*