# CHARLESTON.

UNITED FUEL GAS Co. *v.* LEDSOME, *et al.*

(No. 6592)

Submitted March 4, 1930. Decided March, 11, 1930.
(Rehearing Denied May 31, 1930.)

*Harold A. Ritz* and *B. J. Pettigrew,* for appellant.
*Harper & Baker* and *W. E. R. Byrne,* for appellees.

LITZ, JUDGE:

This is a suit by the lessee of oil and gas property to enjoin the operation of the premises for oil or gas by the

lessors or their assigns. From a decree denying relief the plaintiff has appealed.

June 11, 1914, the defendants, William Ledsome and D. Ledsome, as owners of two adjoining tracts of land in Roane County containing 106 and 14 acres, respectively, leased each parcel, by separate writing (in which their wives joined), to the plaintiff, United Fuel Gas Company, for oil and gas; and the said William Ledsome, as owner thereof, by similar writing (in which his wife joined), leased to the Gas Company, for like purposes, a parcel of land adjoining the 106 acres tract, containing 3½ acres. Each of the lease contracts fixed the term of letting at ten years "and as long thereafter as oil or gas is produced from" the demised premises; and required the lessee (1) to deliver to the lessors in tanks or pipe line, a royalty of one-eighth of all oil produced or saved from the premises, (2) to pay for each gas well while gas is sold therefrom the sum of $75 each three months, and upon failure to drill a well on the demised premises within three months from the date of the lease, (3) to pay the lessors a stipulated sum quarterly until such well shall have been drilled or the lease surrendered. There was also a provision in each lease that "the increased payments herein provided are in full of all damages by reason of all wells now drilled on adjoining property."

November 24, 1915, J. E. Springston, as counsel for the lessors, wrote the Gas Company: "Sometime since I was in your office at Charleston, at the request of Mr. Wallace representing the lessee in regard to the claim of W. M. Ledsome, for off-set wells and damages for failure to develop, and while there Mr. Wallace told me he thought he could arrange for Mr. Ledsome to get pay for three wells at the rate of $250.00 per year for each well whether drilled or not, as compensation for failure to off-set and develop, or words to that effect, or a total sum of $750.00 annually and free gas for domestic purposes. I have advised him, and he authorized me to accept that proposition if acted upon by you promptly. He feels that he would accept the proposition rather than to engage in a litigation which would be expensive and annoying to him and the company also, and that if you wish to make that arrangement,

within a reasonable time, he will accept it by way of a compromise of the differences between himself and the Company, but that he must be given some assurance that the proposal was made in good faith by some action being taken to perfect the same within a short time. Please let me hear from you in regard to the matter at once, that I may know what course to pursue." On August 29, 1916, the lessors and lessee entered into a written contract, reciting the execution of the three several leases, the demand of the lessors upon the lessee to commence operation "upon said land in development of the gas thereunder and for the purposes of off-setting gas wells on other lands," and that "the demand so made" had been compromised. The agreement then provides: That the lessee shall commence a well upon the 106 acres within 90 days and complete the same with reasonable diligence; that the quarterly rentals on the 14 acres and 3½ acres of $50 and $39, respectively, shall each be increased to $62.50; that the lessee shall not be required to drill any well "at any time upon the 14 acres or 3½ acres," but "*shall not have the right to surrender either of said leases until it shall have completed a well thereon, unless it shall at the same time surrender and abandon*" the lease on the 106 acres. The contract further provides that, except as therein expressly modified, each of the three leases shall remain in force and effect. The lessee promptly thereafter drilled a well on the 106 acres which has since been producing gas in paying quantities.

By deed dated January 21, 1920, William Ledsome and wife conveyed to E. R. Reed the oil and gas underlying the 3½ acres, with convenient mining rights, and the benefit of the lease to the United Fuel Gas Company and the modification contract. By deed dated May 10, 1928, E. R. Reed and wife conveyed to William Ledsome, H. C. Geary, H. A. Geary, and E. A. Robertson the oil and gas underlying the 3½ acres and convenient mining rights, subject to said contract. On May 15, 1928, William Ledsome notified the Gas Company in writing that the lease on the 14 acres had, by its terms, expired, and that he would decline to receive or accept any further payments under the lease or the modification contract. About the same time, William Ledsome, H. A. Geary, H. C. Geary,

and E. A. Robertson also declined to accept further rentals on the 3½ acres. By deed dated May 16, 1928, William Ledsome and wife conveyed to H. C. Geary the oil, gas, and other minerals in and underlying the 14 acres, and convenient mining rights. The quarterly rentals on the 14 acres and 3½ acres, as provided in the modification agreement, were paid and accepted in advance to June 11, 1928.

The question for determination is whether payment and acceptance of rentals on the 14 acres and 3½ acres under the modification contract extended the leases covering the same beyond the ten-year term. Defendants deny and plaintiffs affirm the proposition. The said modification contract, which was executed at the instance and for the benefit of the lessors, consolidated the three leases by requiring the lessee to pay an annual rental of $250 or drill a well on each of the small tracts as a condition precedent to its right to operate the oil or gas on the 106 acres. This obligation, under the very terms of the agreement, was to continue until the lessee should surrender and abandon the lease on the 106 acres. Its purpose evidently was to prevent the lessee from draining the small tracts by the operation of a gas well on the large one without paying the lessors sums of money substantially equivalent to the rental or royalty of a well on each of the small tracts. The parties recognized the continuance of the small leases under the force of the contract for four years after the expiration of the ten-year period by the payment and acceptance of the quarterly rentals in accordance with its terms. The annual payment of $250 on each of the small tracts is shown to have been the usual rental or royalty for a gas well in the locality of the property at the date of the agreement.

''Where a new contract is made with reference to the subject-matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with the later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original which are inconsistent with those of the latter.'' *Myers* v. *Carnahan,* 61 W. Va. 414, 57 S. E. 134.

The decree of the circuit court will be reversed, and the relief prayed for granted.

*Reversed.*

MAXWELL, JUDGE, concurring (on petition for re-hearing) :

It appears from recitals in the agreement of August 29, 1916, that it was entered into because of demands that the lessors had made for development under the leases of June 11, 1914. In pursuance thereof it was stipulated in the said agreement: First; That the lessee would begin a well on the 106 acre tract within 90 days thereafter and complete the same with reasonable diligence. Second; That in lieu of $50 quarterly delay rental which was required by the lease on the 14-acre tract the lessee should pay $62.50 quarterly. Third; That in lieu of $50 quarterly delay rental required by the lease on the 3½ acre tract the lessee should pay $62.50 quarterly. And further that the lessee should not have the right to surrender the lease on either of the smaller tracts until it had completed a well thereon, "unless it shall at the same time surrender and abandon" the lease on the tract of 106 acres. The lessee reserved the right to drill upon either of the smaller tracts, if it so elected, and thereafter to surrender such smaller tract whether the 106-acre tract was surrendered or not. Fourth; That "the first parties hereby release and discharge the second party from the obligation and liability to drill any wells upon any of said three tracts of land in development thereof or as offsets to wells on adjoining land now or hereafter completed, except the well above agreed to be drilled on said tract of one hundred and six (106) acres."

The evidence shows that at the time of the compromise agreement of August 29, 1916, the average annual price paid for a gas well in the vicinity of these tracts of land was $250. Quarterly rentals of $62.50 each, amount to $250 per annum. It is thus seen that the later agreement provided for the payment of the exact amount of the average annual royalty for a gas well on each of the two smaller tracts the same as though a well had been drilled on each of them. The leases on the two smaller tracts were thus to stand in the same situation as though each had a producing gas well on it. As to these two

tracts there thus came into being an agreement in lieu of drilling. The effect of this was to carry the leases on the smaller tracts beyond the 10-year term and as long as that plan was adhered to. Much stress is laid by the appellees upon the last provision of the compromise agreement. It reads: "In all respects not expressly modified hereby the said three leases shall remain in force according to their respective terms and provisions." Of course all the provisions of the leases remained in effect save as the compromise modified them, but by that modification, the leases on the smaller tracts being placed on the same basis as though a gas well had been drilled on each, the lessors thereby necessarily waived their right to declare a forfeiture because wells were not in fact drilled.

The leases each provided for $300 annual gas well royalty. Able counsel for the appellees say in effect that the new arrangement of $250 per annum cannot therefore properly be considered as a substitute for the royalty for a well drilled under one of the smaller leases. I see no difficulty with this proposition. The agreement of August 29, 1926, was a compromise. The lessors had no assurance that if wells were drilled on the smaller tracts they would be producing wells. It does not seem unreasonable that a sure return of $250 per annum should take the place of an uncertain $300. Nor in my opinion is there here involved any inconsistency with the above quoted last provision of the contract, namely, that, except as expressly modified by the later agreement, the three leases should remain in force according to their respective terms and provisions. In my judgment the necessary effect of the modifying agreement was to substitute $250 definite annual income for a problematical $300 as the basis for considering and treating each small lease to be in the same situation as though a producing gas well had been drilled thereon.