CONSOLIDATION COAL COMPANY

*v.*

MINERAL COAL COMPANY

(CC863)

Submitted April 24, 1962.        Decided June 19, 1962.

*Amos, Amos & Webb, John D. Amos, Hays Webb, Richard B. Bord,* for plaintiff.

*Edward T. Luff,* for defendant.

HAYMOND, JUDGE:

In this civil action instituted in the Circuit Court of Barbour County on November 1, 1961, the plaintiff, Consolidation Coal Company, a corporation, seeks injunctive relief against the defendant, Mineral Coal Company, a corporation, to enjoin and restrain the defendant from mining and removing by the strip or auger method the coal in an area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 of the plaintiff, located on Simpson Creek, in Barbour County, West Virginia.

Sometime prior to the first day of November, 1961, the defendant had entered the lands of the plaintiff and placed equipment on or near the area in question for the purpose of removing the coal by the strip or auger mining method. The verified complaint charges that the defendant has no

right, by lease or otherwise, to remove the coal in the area in dispute which allegedly contains approximately twenty-four acres of coal and prays that the defendant be enjoined from stripping the coal in the area around No. 3 Tipple and No. 3 Portal of Galloway Mine No. 3 on Simpson Creek, or in the alternative, that the defendant be enjoined from stripping the coal in that area until the deep mining of the plaintiff has been completed in the adjacent area of twenty four acres of coal, which the complaint alleges has not been done, and that the plaintiff be granted such other relief as the nature of the case may require.

Upon the complaint and the exhibits filed with it, among which are a copy of a deed dated January 2, 1958, by Simpson Coal and Chemical Corporation to Pittsburgh Consolidation Company, the former corporate name of the plaintiff, and under which the plaintiff claims to own the area in question, designated "Exhibit A", a copy of a lease dated June 28, 1951, designated "Exhibit C", a map designated "Exhibit D", a copy of a renewal agreement dated July 6, 1954, designated "Exhibit E", a copy of an agreement dated April 25, 1955, designated "Exhibit F", and a copy of an agreement dated September 24, 1956, designated "Exhibit G", the circuit court issued a preliminary injunction against the defendant on November 1, 1961. The injunction, as subsequently modified, is still in force and effect.

On November 3, 1961, the defendant filed its verified answer to the complaint and its written motion to dismiss the action on the ground that the complaint fails to state a claim against the defendant upon which relief can be granted for the reasons stated in Defense No. 3 of the answer. By that defense, as alleged in the answer, the defendant asserts that, under the provisions of the original lease and agreement dated June 28, 1951, between Simpson Creek Collieries Company, the former owner of the land, as lessor, and A. R. Sowers and Charles E. Compton, partners doing business as Sowers Coal Company, as lessee, a copy of which is designated "Exhibit C" with the complaint, the renewal agreement dated July 6, 1954, between Simpson Coal and Chemical Corporation, the name of Simpson Creek Collieries

Company having been changed to Simpson Coal and Chemical Corporation, as lessor, and A. R. Sowers and Charles E. Compton, partners doing business as Sowers Coal Company, as lessee, a copy of which is designated "Exhibit E" with the complaint, the agreement dated April 25, 1955, between Simpson Creek Collieries Division of Simpson Coal and Chemical Corporation, as lessor, and A. R. Sowers and Charles E. Compton, partners doing business as Sowers Coal Company, as lessee, and Mineral Coal Company, as sublessee, a copy of which is designated "Exhibit F" with the complaint, and the agreement dated September 24, 1956, between Simpson Coal and Chemical Corporation, as lessor, and Mineral Coal Company, as lessee, a copy of which is designated "Exhibit G" with the complaint, the defendant has the right to mine and remove the coal by the strip or auger method in the area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3, formerly owned by Simpson Coal and Chemical Corporation and now owned by the plaintiff, during the period of the original lease as extended and modified by the above designated subsequent agreements; that the agreement dated September 24, 1956, a copy of which is designated "Exhibit G" with the complaint, grants to Mineral Coal Company, the lessee, the right so to mine and remove the coal in the area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3, after the deep mining of coal in that area is completed and the mining plant and equipment are removed from that area by the lessor. The defendant alleges in the answer that such deep mining has been completed and that the mining plant and equipment of the lessor have been removed from that area by the lessor.

By decree entered November 28, 1961, the circuit court modified the preliminary injunction which, as modified, enjoined and restrained the defendant from strip mining coal in the area of the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek or in that vicinity, until the further hearing of the action upon its merits or until the further order of the court, fixed the penalty of the injunction bond at $50,000.00, overruled the motion of the defendant to dissolve the injunction, overruled the motion of the defendant to dismiss this action because the complaint fails

to state a claim against the defendant on which relief can be granted, and held that Defense No. 3, set forth in the answer of the defendant, is not a defense to the complaint for the reason that the written instrument dated September 24, 1956, designated "Exhibit G" with the complaint, considered together with designated "Exhibit C", "Exhibit D", "Exhibit E", and "Exhibit F", does not constitute a lease to Mineral Coal Company to strip and auger mine the coal area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek, and on its own motion certified its ruling concerning the sufficiency of Defense No. 3 to this Court.

The question certified is whether, under the provisions of the original lease, dated June 28, 1951, designated "Exhibit C", the renewal agreement, dated July 6, 1954, designated "Exhibit E", modifying and extending the term of the original lease, the agreement, dated April 25, 1955, designated "Exhibit F", extending the term of the original lease and the term of the renewal agreement, and the agreement, dated September 24, 1956, designated "Exhibit G", modifying the original lease and extending its term for an additional period of two years from June 28, 1960, as alleged in the answer of the defendant in asserting its Defense No. 3 to the complaint of the plaintiff, the defendant has the right to mine and remove by the strip or auger mining method the coal in the disputed area referred to as the coal area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek. That is the only question to be considered and resolved upon this certificate to this Court. *Brumfield* v. *Wofford,* 143 W. Va. 332, 102 S. E. 2d 103; *Weatherford* v. *Arter,* 135 W. Va. 391, 63 S. E. 2d 572; *Weese* v. *Weese,* 134 W. Va. 233, 58 S. E. 2d 801; *Posten* v. *Baltimore and Ohio Railroad Company,* 93 W. Va. 612, 117 S. E. 491; *County Court of Raleigh County* v. *Cottle,* 82 W. Va. 743, 97 S. E. 292; *The City of Wheeling* v. *The Chesapeake and Potomac Telephone Company of West Virginia,* 81 W. Va. 438, 94 S. E. 511.

In support of the ruling of the circuit court, the plaintiff contends that none of the foregoing instruments, individually or collectively, constitutes a lease of the area in con-

troversy; that such instruments can not properly be read together as a single lease; that the agreement dated September 24, 1956, designated "Exhibit G", must be considered separately and apart from the original lease and when so considered does not embrace the disputed area or create or give to the defendant any right to strip mine or auger mine the coal in that area.

In opposition to the position of the plaintiff the defendant insists that under the original lease, as modified and extended by the three subsequent written instruments, the defendant has the right to mine and remove the coal in the disputed area by the strip and auger mining methods.

By the original lease, dated June 28, 1951, designated "Exhibit C", Simpson Creek Collieries Company, whose corporate name was subsequently changed to Simpson Coal and Chemical Corporation, as lessor, leased eight separate tracts of coal land to A. R. Sowers and Charles E. Compton, partners trading and doing business as Sowers Coal Company, as lessee, for a maximum period of five years, at a royalty of thirty cents for each ton of 2,000 pounds of merchantable coal mined and sold by the lessee. The lease did not describe the eight tracts of coal by metes and bounds, but provided that the lease should cover all the crop line and stripping coal owned by the lessor, beginning at the G. E. Bailey twenty six acre coal reservation on Simpson Creek and extending up Simpson Creek and up Camp Run and crossing Camp Run below the present portal of the lessor's No. 3 deep mine and thence back down Camp Run and up Simpson Run to Baker's Run and up Baker's Run to the western limits of the S. H. Talbott tract; that the lessee should have and was granted the privilege of entering upon the tracts or parcels of real estate for the purpose of mining and removing all of the Pittsburgh vein of coal which may be mined and removed by the method of mining commonly called strip mining, to be followed by mining and removing coal by the method of mining commonly referred to as auger mining, and that the lessee should strip mine, excavate and remove the coal back to at least the forty five foot cover line, exclusive of vegetation, except that the lessee should be ex-

cused from removing the coal back to the forty five foot cover line where the character of the overburden was such as to render such removal unprofitable or the coal not merchantable or minable. The lease contained a provision that the lessee should not assign or sublet the lease or the rights of the lessee under it without the consent, in writing, of the lessor and that the lease should be binding upon and enure to the benefits of the lessor, its successors and assigns, and the lessee, its successors and assigns and numerous other provisions not material to the present controversy. The location of the crop line of the coal covered by the original lease is indicated upon a map designated "Exhibit D". The area in controversy, which the defendant claims consists of 6.97 acres of coal recoverable by strip and auger mining methods, was not covered or described in the original lease.

By the renewal agreement, dated July 6, 1954, designated "Exhibit E", between Simpson Coal and Chemical Corporation, successor to Simpson Creek Collieries Company, as lessor, and A. R. Sowers and Charles E. Compton, partners trading and doing business as Sowers Coal Company, as lessee, it was agreed between the parties that the lease of June 28, 1951, be renewed and reinstated upon certain specified terms and conditions until June 28, 1956, and the original lease, except as otherwise provided in the renewal agreement, was reinstated and renewed and was given the same force and effect as if it had been set forth in full in the renewal agreement. The area in controversy likewise was not covered or described in the renewal agreement.

By the agreement dated April 25, 1955, designated "Exhibit F", between Simpson Creek Collieries Division of Simpson Coal and Chemical Corporation, as lessor, and Sowers Coal Company, a partnership composed of A. R. Sowers and Charles E. Compton, as lessee, and Mineral Coal Company, a corporation, as sublessee or assignee, in consideration of $1.00 and the performance by Mineral Coal Company of certain terms and conditions and the payment of certain sums of money to the lessor and the lessee, the lessee sublet, sold, assigned and transferred to Mineral Coal

Company, upon certain specified terms and conditions, all the rights and privileges contained in the original lease dated June 28, 1951, and the renewal agreement dated July 6, 1954, and the term of the original lease was extended for an additional period of one year from June 28, 1957. This agreement also provided that in all respects, except as modified by the agreement, the original lease and the renewal agreement were retained in full force and effect. The area in controversy likewise was not covered or described in this agreement.

By the agreement dated September 24, 1956, designated "Exhibit G", between Simpson Coal and Chemical Corporation, as lessor, and Mineral Coal Company, as lessee, in consideration of the premises and $1.00 paid by the lessee, the term of the original lease as modified by the agreement of April 25, 1955, was extended for an additional period of two years and until June 28, 1960, and if the strip and auger mining was not completed by that date the lessee was given the privilege of extending the term for an additional period of two years from June 28, 1960. This agreement contained the erroneous recital that by the written agreement dated June 28, 1951, the lessor leased and demised to Sowers Coal Company "the strip mining and auger mining on a part of the No. 3 Side of the coal lands" owned by the lessor in Pleasant District of Barbour County, West Virginia, which is the area in dispute in this controversy, but notwithstanding such erroneous recital the agreement incorporated and contained this description of the disputed area: "beginning at the No. 3 tipple, and extending thence southwardly following the crop line of the Pittsburgh vein of coal up Simpson Creek to Camp Run, thence up Camp Run on the north side thereof to the head of Camp Run and back down Camp Run on the south side thereof to Simpson Creek, thence up Simpson Creek to Baker's Run, and up Baker's Run on the north side thereof to lands formerly owned by Brohard and Bailey, now Wolfe Brothers,"; and expressly referred to the original lease and its terms. The foregoing erroneous recital did not remove or exclude the above described area in controversy from the scope or effect of the agreement.

The agreement dated September 24, 1956, after correctly reciting that the original lease reserved royalties of thirty cents for each and every net ton of 2,000 pounds of coal mined and removed from the leased premises by the strip mining method or by the auger mining method, that Sowers Coal Company was unable to obtain the stripping rights for the surface land overlying the coal, that by an agreement, in writing, dated April 25, 1955, the Sowers Coal Company sold and assigned the lease, with the consent of Simpson Coal and Chemical Corporation, to Mineral Coal Company, that the lease was extended for an additional period of two years from the original termination date of June 28, 1956, that subsequently Mineral Coal Company obtained the stripping rights for the surface lands covering ninety per cent or more of the territory covered by the lease and was in a position to acquire the additional stripping rights, but would not have sufficient time to complete the strip mining and auger mining within the previous period of extension, and that the parties desired to have a further extension of the time for the completion of the stripping and augering and to make such extension conform as to time with the surface rights acquired by Mineral Coal Company, expressly provided that the lessee shall now have the privilege of stripping the area on Camp Run west of the trestle and follow the crop line of the Pittsburgh Coal completely around the head of Camp Run for stripping and augering, and that as to the area around No. 3 Tipple and the No. 3 Portal on Simpson Creek there shall be no stripping until the deep mining has been completed and the lessor has removed its mining plant and equipment from the stripping area, following which the lessee may likewise strip and auger mine that area; and that in all other respects the original lease of June 28, 1951, and its modification of April 25, 1955, should be and they were ratified and confirmed.

It appears from the allegations of the complaint that the deed dated January 2, 1958, from Simpson Coal and Chemical Corporation to Consolidation Coal Company by its then name of Pittsburgh Consolidation Coal Company, provided that the conveyance was made subject to, and that the grantor excepted and reserved from such deed, the instru-

ments mentioned in this quotation from the deed: " a certain stripping and augering lease made by Simpson to Sowers Coal Company, bearing date on the 28th day of June 1951, of record in the office of the Clerk of the County Court of Barbour County, West Virginia, in Deed Book No. 175 at page 277, and to three extensions and amendments to said lease, the first bearing date on July 6, 1954, of record in the office of the Clerk of the County Court of Barbour County, West Virginia, in Deed Book No. 180, at page 90, the second bearing date on the 25th day of April 1955, wherein the said lease was sold and transferred to the Mineral Coal Company, a corporation, of record in said Clerk's office in Deed Book No. 175, at page 291, and the third extension and amendment thereof bearing date on the 24th day of September 1956, of record in said Clerk's office in Deed Book No. 175, at page 301, to all of which leases and agreements, of record as aforesaid, reference is now here made, and Simpson reserves the right to collect the rents and royalties provided in said lease and the amendments and extensions thereof aforesaid, except that as to stripping and augering authorized by said lease, amendments and extensions thereof aforesaid, on that portion of the surface lands hereinbefore described lying south of said State Highway No. 77 as presently located, if any, Simpson hereby waives and transfers to the Coal Company any and all rents and royalties which accrue therefrom."

Notwithstanding the contention of the plaintiff that the agreement dated September 24, 1956, designated "Exhibit G", between Simpson Coal and Chemical Corporation and Mineral Coal Company, does not constitute a lease and that the original lease dated June 28, 1951, designated as "Exhibit C", the renewal agreement dated July 6, 1954, designated "Exhibit E", the agreement dated April 25, 1955, designated "Exhibit F", and the agreement dated September 24, 1956, designated "Exhibit G", considered individually or collectively, do not create a lease of the area in controversy and that they can not properly be read together as one instrument, it is clear that the agreement dated September 24, 1956, designated "Exhibit G", constitutes a supplemental lease as does each of the agreements dated July 6, 1954, designated

"Exhibit E", and April 25, 1955, designated "Exhibit F"; that each of them constitutes a modification and extension of the original lease of June 28, 1951, and that all of them together constitute one single lease as modified by the supplemental leases. In each of the supplemental leases the parties are designated as lessor and lessee and the provisions of the original lease, as modified by the supplemental leases, indicate clearly that it was the intention of the parties that those agreements together should constitute a lease of the property described in the original lease and the additional area, which is the area in controversy described in the supplemental lease dated September 24, 1956, and that the lessor, Simpson Coal and Chemical Corporation, intended to lease the property described in the original lease first to Sowers Coal Company, the original lessee, and subsequently the additional disputed area described in the supplemental lease dated September 24, 1956, to Mineral Coal Company, upon the terms contained in the original lease, except as modified by the supplemental leases, during the term specified in the original lease as extended from time to time by the supplemental leases until June 28, 1962. The language used by the lessor in the deed made by it to the plaintiff confirms this view as it designates the three subsequent agreements as "three extensions and amendments to the lease," specifically refers to them as "leases and agreements", and expressly reserves the right to collect certain rents and royalties provided in "the lease and the amendments and extensions thereof."

A mineral lease may be modified by agreement of the parties provided the modification is supported by a sufficient consideration; and the modification may consist of the new terms and as much of the old lease as the parties have agreed shall remain unchanged, in which case the terms and conditions of the original lease, so far as consistent with the modified contract, will remain in full force and effect and become incorporated in the modified contract. 58 C.J.S., Mines and Minerals, Sections 168b and 172. The subsequent modification of a lease does not ordinarily abrogate and supersede the old contract completely but only in regard to the particular provision or subject to which it refers and as

to which the inconsistency exists. 3 Thompson on Real Property, 1959 Replacement, Section 1066, page 257. Generally the rights and the liabilities of the parties after the modification of a lease are controlled by the terms and the conditions of the lease as modified. 58 C.J.S., Mines and Minerals, Section 168b. "Where a new contract is made with reference to the subject matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with a later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original, which are inconsistent with those of the latter." Point 3, syllabus, *Myers* v. *Carnahan,* 61 W. Va. 414, 57 S. E. 134; *United Fuel Gas Company* v. *Ledsome,* 109 W. Va. 14, 153 S. E. 303. In *Wilson* v. *Reserve Gas Company,* 78 W. Va. 329, 88 S. E. 1075, in considering an oil and gas lease which modified an earlier oil and gas lease between the same parties and relating to the same subject matter, this Court said "So it seems that these two instruments, coupled together as they are in all their essential features, can not properly be construed otherwise than as having all the constituent elements of one harmonious lease contract. *Myers* v. *Carnahan,* 61 W. Va. 414. Indeed, the notice served on the company calls the paper an extension contract, as certainly it is. It supplements the prior contract, and, as supplemented and enlarged, both speak the result of the final negotiations between the parties thereto." In view of the material facts disclosed by the pleadings in this action the language just quoted applies with peculiar force to, and is controlling as to the effect of, the lease dated June 28, 1951, and the three supplemental leases which modify that instrument.

It is true, as pointed out by the plaintiff, that the agreement dated September 24, 1956, designated "Exhibit G", does not contain the terms *demise, lease* or *let.* The absence of such terms, however, does not affect the character of that agreement as a lease. No particular form of words is necessary to create a lease and whatever is sufficient to explain the intent of the parties that one shall divest him-

self of the possession and the other shall come into it, for a determinate time, amounts to a lease. 51 C.J.S., Landlord and Tenant, Section 211a. In *Upper Appomattox Co.* v. *Hamilton,* 83 Va. 319, 2 S. E. 195, the opinion, citing *Mickie* v. *Lawrence,* 5 Rand. 571, 26 Va. 571, contains this language: "No set form of words, however, is necessary to constitute a lease; and in doubtful cases, like the present, the nature and effect of the instrument must be determined in accordance with the intention of the parties, as such intent may be collected from the whole instrument." The parties to the agreement dated September 24, 1956, are designated as lessor and lessee and it is clear, from the language of that agreement, when read in connection with the original lease and the agreements dated July 6, 1954, and April 25, 1955, designated "Exhibit E" and "Exhibit F", that the parties intended to create the relation of landlord and tenant between them by those instruments with respect to the property described in the original lease and in the supplemental lease dated September 24, 1956. In *Porter* v. *Woodard,* 134 W. Va. 612, 60 S. E. 2d 199, this Court said " 'The relation of landlord and tenant is created by a contract, either express or implied, by the terms of which one person designated "tenant" enters into possession of the land under another person known as "landlord". 32 Am. Jur., Landlord and Tenant, Section 2. It is sufficient if the words of such contract, though informal, be such as to create the relation of landlord and tenant. See *Mickie* v. *Lawrence,* Ex'r. of Wood, 5 Rand. 571, 26 Va. 571; *Upper Appomattox Co.* v. *Hamilton,* 83 Va. 319, 2 S. E. 195, 197; 1 McAdam on Landlord and Tenant, 5th Ed., Section 22; 1 Taylor, Landlord and Tenant, 9th Ed., Section 14'."

The description in the agreement dated September 24, 1956, designated "Exhibit G", being the area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek, is sufficiently accurate to indicate clearly the property intended to be covered by that instrument. The description definitely locates the crop line of the coal and specifies its point of beginning and its terminus; and the location of the crop line of the coal is indicated on the map designated "Exhibit D". Manifestly, the description

of the area in controversy is not such as to render the agreement dated September 24, 1956, void for uncertainty or inadequacy of the description. A deed will not be declared void for uncertainty if it is possible, by any reasonable rule of construction, to ascertain from the description, aided by extrinsic evidence, the property it is intended to convey. *Jones* v. *Gibson*, 118 W. Va. 66, 188 S. E. 773; *Foley* v. *Ruley*, 43 W. Va. 513, 27 S. E. 268; *Simpkins* v. *White*, 43 W. Va. 125, 27 S. E. 361; *Thorn* v. *Phares*, 35 W. Va. 771, 14 S. E. 399. The office of a description is not to identify the land, but to furnish means of identification. *Meadow River Lumber Company* v. *Smith*, 126 W. Va. 847, 30 S. E. 2d 392; *Jones* v. *Gibson*, 118 W. Va. 66, 188 S. E. 773; *Smith* v. *Owens*, 63 W. Va. 60, 59 S. E. 762; *Hoard* v. *Huntington and Big Sandy Railroad Company*, 59 W. Va. 91, 53 S. E. 278, 8 Ann. Cas. 929. The main object of a description of land sold or conveyed, in a deed of conveyance, or in a contract of sale, is not in and of itself to identify the land sold but to furnish the means of identification, and when this is done it is sufficient. That is certain which can thus be made certain. *Thorn* v. *Phares*, 35 W. Va. 771, 14 S. E. 399. When the description of the land conveyed in a deed is general, the deed will not be held void for uncertainty, if by the aid of extrinsic evidence it can be located and its boundaries ascertained. *Bolton* v. *Harman*, 98 W. Va. 518, 128 S. E. 101. The requirement that a deed must describe the premises with certainty applies to leases as does also the maxim "that is sufficiently certain which can be made certain." 32 Am. Jur., Landlord and Tenant, Section 40. The main object of a description of land embraced in a lease is not in and of itself to identify the land leased but is to furnish the means of identification and when this is done such description is sufficient. That is certain which can thus be made certain. When the description of land covered by a lease is general, the lease will not be held void for uncertainty, if by the aid of extrinsic evidence the land can be located and its boundaries ascertained. Any description in a lease by which the identity of the leased property may be established is sufficient.

The provision in the agreement dated September 24, 1956, designated "Exhibit G", relating to the area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek, that there should be no stripping in that area or vicinity until the deep mining has been completed and the lessor has removed its mining plant and equipment from the stripping area, following which the lessee may likewise strip and auger mine that area, properly applied, confers upon the lessee the right to strip and auger mine the coal in that area, as described in the agreement, in accordance with the terms and provisions of, and for the royalty specified in, the original lease except as it is modified, when the deep mining has been completed and the lessor has removed its mining plant and equipment from that area, if the completion of the deep mining and the removal of the mining plant and equipment occur before the expiration of the period of the original lease, which was extended by the agreement dated September 24, 1956, until June 28, 1962.

The original lease and the three agreements which modify and extend its term are based upon a valuable consideration, and each of them satisfies the requirement that a lease, as other contracts, must be based upon a valid consideration.

Defense No. 3 and the facts upon which it is based, as alleged in the answer, contrary to the ruling of the circuit court, show that the agreement dated September 24, 1956, designated "Exhibit G", and the instruments, separately designated "Exhibit C", "Exhibit E", and "Exhibit F", to the complaint, when considered together, constitute a lease to the defendant to strip mine and auger mine the coal area around the No. 3 Tipple and the No. 3 Portal of Galloway Mine No. 3 on Simpson Creek; and Defense No. 3 is a valid defense to the complaint of the plaintiff.

The complaint alleges that the deep mining in the area in controversy has not been completed and that the mining plant and equipment have not been removed from the area by the lessor and that for that reason the provision of the agreement dated September 24, 1956, with respect to the right of the defendant to strip mine and auger mine the coal

in that area, if it has any such right under that instrument, is inoperative because the conditions with respect to the completion of the deep mining and the removal of the mining plant and equipment have not been complied with or satisfied. The answer of the defendant, however, alleges that Simpson Coal and Chemical Corporation has completed its deep mining in the area around No. 3 Tipple and No. 3 Portal of Galloway Mine No. 3 and has removed its mining plant and equipment from that area and that those conditions have been satisfied and fulfilled. These conflicting allegations of the complaint and the answer create a disputed question involving material facts which, of course, can not be considered or resolved upon this certificate; and any such conflict in the material facts must be heard and determined by the circuit court.

The ruling of the circuit court upon the question presented by the certificate is reversed and this action is remanded to that court for further proceedings in accordance with the principles enunciated in this opinion.

*Ruling reversed.*